AMERICAN BEMBERG CORPORA-
TION, a corporation, Plaintiff,

v.

The UNITED STATES of America,
Defendant.

Civ. A. No. 1585.

United States District Court
D. Delaware.

March 29, 1957.

Howard L. Williams (of Morris, James, Hitchens & Williams), Wilmington, Del., Robert Ash and Carl F. Bauersfeld (of Ash, Bauersfeld & Burton), Washington, D. C., and George Heftler, of counsel, Union City, N. J., for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe and Kurt W. Melchior, Dept. of Justice, Washington, D. C., for defendant.

CALEB M. WRIGHT, District Judge.

This is an action for refund of income and excess profits taxes.

The plaintiff, American Bemberg Corporation, was incorporated under the laws of Delaware in 1925.[1]  Originally, the capitalization consisted of $3,500,-000, 7% preferred stock and 140,000 shares of common stock having no par value.[2]  Two years later Class B no par value common stock was issued.[3]  Between 1925 and 1929 the majority of the

---

1. Par. 1 of the Complaint, admitted in par. 1 of the Answer.

2. T–R p. 21.

3. Ibid.

voting stock was owned by two German corporations, Vereinigte Glanzstoff Fabriken (hereinafter referred to as V.G.F.) and J. P. Bemberg.[4] In 1929, Algemeene Kunstzijde Unie (hereinafter referred to as A.K.U.) a Netherlands corporation, acquired control of V.G.F. and subsequently acquired some of the shares owned in American Bemberg by V.G.F. so that A.K.U. together with V.G.F. and J. P. Bemberg owned a majority of the voting stock of the plaintiff from 1929 up to 1940.[5]

In order to make the preferred stock issue of the plaintiff salable to a banking syndicate and in turn attractive to the American investing public,[6] V.G.F. and J. P. Bemberg guaranteed the semi-annual dividends from July 1, 1925 to July 1, 1929.[7] The guaranty agreement between the plaintiff and the guarantors is as follows:[8]

"Agreement made this 16th day of July, 1925, between VEREINIGTE GLANZSTOFF FABRIKEN, AKTIEN-GESELLSCHAFT, and J. P. BEMBERG, AKTIEN-GESELLSCHAFT, German corporations, parties of the first part, (hereinafter respectively called 'Glanzstoff' and 'Bemberg'), and AMERICAN BEMBERG CORPORATION, a Delaware corporation, party of the second part, (hereinafter called the 'American Corporation'), and on behalf of itself and of all future holders of the preferred stock hereinafter mentioned,

"Witnesseth:

"In consideration of the mutual agreements hereinafter contained, and of other good and valuable considerations, the receipt whereof is hereby acknowledged, the parties hereto agree with each other as follows:

"First: Glanzstoff and Bemberg hereby jointly and severally guaran- tee to each holder of record for the time being of certificates representing 35,000 shares of the preferred stock of the par value of $100 each about to be issued by the American Corporation, the due and punctual payment of semi-annual dividends upon the stock represented by such certificates at the rate of 7% per annum for the period from July 1, 1925 to July 1, 1929, inclusive, and Glanzstoff and Bemberg hereby jointly and severally agree that if the American Corporation should itself be unable to or fail to pay as contemplated by the terms of such preferred stock certificates and of the Certificate of Incorporation therein referred to the semi-annual dividends at the rate of 7% per annum upon said preferred stock for such period then, and in any such event, they will punctually pay any amount unpaid by the American Corporation in respect of such dividends without notice or demand; and any record holder of certificates representing such preferred stock then entitled to the benefit of the guaranty herein contained, either individually or jointly with other record holders of such certificates so entitled or by an agent duly appointed for such purpose, may immediately upon failure to receive any dividends on the day on which they are payable as provided in certificates representing such preferred stock, and without the necessity of proving any other fact or on demand upon or refusal of the American Corporation, proceed to enforce such payment by Glanzstoff and Bemberg.

"Second: There shall be endorsed upon each certificate for said shares of preferred stock of the American Corporation to be presently issued, and upon each certificate from time to time duly issued for and upon

4. T–R p. 31.

5. T–R pp. 31–32.

6. T–R p. 22.

7. T–R p. 21.

8. Exhibit "A" attached to the Complaint.

the transfer of certificates for such stock on or before July 1, 1929, the following legend:

" 'Vereinigte Glanzstoff Fabriken, Aktien-Gesellschaft and J. P. Bemberg, Aktien-Gesellschaft, both German Corporations, have by agreement dated July 16th, 1925, with American Bemberg Corporation, guaranteed the payment of semi-annual dividends upon the stock represented by this certificate for the period from July 1, 1925 to July 1, 1929, inclusive, and by acceptance of this certificate the holder hereof becomes entitled to the benefits and subject to the provisions of said agreement.'

"Third: Upon making any payment pursuant to said guaranty, to or for the benefit of any holder of any such certificate for such preferred stock of the American Corporation, Glanzstoff and/or Bemberg shall forthwith without further act or deed, thereupon be subrogated to and shall acquire and shall be possessed of all the rights which the holders of such certificates would otherwise have against the American Corporation with respect to any payment of dividend, non-payment of which by the American Corporation will thus have been made good by Glanzstoff and/or Bemberg; and the said holder, his successor and assigns shall thereafter be limited in his or their rights against the American Corporation in all respects as though such payments had been made to such holder by the American Corporation by way of dividend; and Glanzstoff and/or Bemberg shall be entitled to be reimbursed directly by the American Corporation for any and all such payments made by Glanzstoff and/or Bemberg pursuant to said guaranty, together with interest at the rate of 5% per annum, in such manner, to such extent and at the earliest date as may lawfully be permitted, and to that end, it is hereby agreed that Glanzstoff

and/or Bemberg shall be entitled to all accumulations of dividends upon such preferred stock which shall not have been paid by the American Corporation, and the amount of which Glanzstoff and/or Bemberg have paid to the record holders of certificates for such preferred stock pursuant to said guaranty, and it is further agreed that whenever the American Corporation declares dividends on account of any or all such accumulations of dividends, the same shall be paid to Glanzstoff and/or Bemberg, provided however, that no dividends shall be declared and paid on account of any such accumulation of dividends, or reimbursement made to Glanzstoff and/or Bemberg until and unless the regular dividend for the then current semi-annual period shall have been declared upon the outstanding preferred stock of the American Corporation, and a sum sufficient for the payment thereof set apart for that purpose; nor shall any reimbursement be made to Glanzstoff and/or Bemberg except out of the profits of the American Company; nor, in the event of any liquidation, dissolution or winding up of the affairs of the American Corporation, whether voluntary or involuntary, shall any reimbursement be made to Glanzstoff and/or Bemberg until the holders of the preferred stock shall have received $110. per share plus all unpaid accrued dividends.

"Fourth: This agreement shall enure to the benefit of and shall bind the successive holders of record from time to time of certificates for the 35,000 shares of preferred stock of the American Corporation now being issued. The persons in whose names such stock is recorded on the books of the American Corporation shall for all the purposes hereof, be regarded as the owner thereof and such record holders are alone entitled to the benefit of the provision of this agreement. Payment made.

to or upon the order of any such record holder shall be valid and effectual to discharge and satisfy all liability of Glanzstoff and Bemberg with respect to the stock of which such person is the holder of record to the extent of the sum so paid.

"Fifth: Each successive holder of shares of preferred stock of the American Corporation bearing endorsed thereon the legend hereinbefore in Paragraph Second recited, shall by its acceptance thereof, become for all purposes a party to this agreement as though he had originally signed and executed the same.

"In Witness Whereof, the parties hereto have executed this agreement as of the day and year first above written at New York City, New York.

"Vereinigte Glanzstoff Fabriken
Actiengesellschaft
By F. Bluethgen
"J. P. Bemberg Actiengesellschaft
By W. Langenbruch
"American Bemberg Corporation
By Dr. A. Mothwurf"

V.G.F. paid [9] the entire amounts of the semi-annual dividends for the guaranty period with the exception of one-half of the amount due for the semi-annual dividend period ending June 30, 1928, and the entire amount due for the semi-annual dividend period ending December 31, 1928. These advances were necessary under the guaranty agreement because the plaintiff had no profits from which to pay the preferred stock dividends.[10] The dates of payment and the amounts thereof were as follows:[11]

| | |
|---|---|
| December 31, 1925 | $122,500.00 |
| June 30, 1926 | 122,500.00 |
| December 31, 1926 | 122,500.00 |
| June 30, 1927 | 122,500.00 |
| December 31, 1927 | 122,500.00 |
| June 30, 1928 | 61,250.00 |
| June 30, 1929 | 122,500.00 |
| Total | $796,250.00 |

V.G.F. assigned its rights under the guaranty agreement to A.K.U. in 1939.[12]

V.G.F. made the advances to American Bemberg, or to its transfer agent, who disbursed the payments to the preferred stockholders.[13] While the court reads the agreement as silent with respect to the method of payment of the advances, the plaintiff and the government stipulated V.G.F. made advances to the plaintiff under the terms of the agreement.[14] American Bemberg did not consider this method of payment a deviation[15] from the agreement.

Whenever the advances were made to it under the guaranty agreement, the plaintiff declared a dividend to the preferred stockholders of record,[16] although to do so was illegal under the Delaware

9. T-R p. 47; J. P. Bemberg, the other guarantor made no advances under the guaranty agreement.

10. T-R pp. 22–23.

11. Complaint, par. 7; Stipulation of Facts, par. 6.

12. T-R pp. 36, 48.

13. T-R pp. 22, 40, 45–46.

14. Stipulation of Facts, par. 6; Complaint, par. 7.

15. T-R pp. 32–33.

16. The initial confusion of the record on this point, (T-R p. 39—no dividends were declared except those paid out of the earnings of American Bemberg in 1928; T-R p. 40—it is possible some of the dividends were declared payable by the guarantor) was removed by the introduction of Plaintiff's Exhibit 2 which reads as follows:

"Minutes of a Special Meeting of the Board of Directors of American Bemberg Corporation, held at the office of the Ver. Glanzstoff-Fabr. E'fld, Germany, on the 23rd day of December, 1925, at 4 o'clock in the afternoon.

"There were present: Messrs. Dr. Bluethgen, Dr. Springorum, Carl Benrath Wilh. Langenbruch, Alfr. Schoenlicht, Ludolf Rosenheim, Kurt Meyer, Dr. Hartogs, constituting a majority of the Board.

"Dr. Bluethgen was elected Chairman, and Mr. Langenbruch was Secretary of the meeting.

"The Chairman then stated that the semi-annual dividend upon the Preferred

law.[17] In making the dividend declarations, the directors of the plaintiff corporation did not intend to deviate from the agreement[18] and thought they were acting pursuant to its terms.[19]

According to its statement of profit and loss, per its books,[20] the plaintiff showed losses for the first three years of operation (1925–1927), a profit for 1928, losses for 1929–1932, a profit for 1933, a loss for 1934–1935, and a profit for 1936 through 1940. If the aggregate of profit and loss, per its books, is calculated together with adjustments, the plaintiff would have had sufficient profits in 1939 from which to repay V.G.F. the amount which it had advanced under the guaranty agreement, together with interest. However, when there is deducted from this aggregate figure the amounts paid as dividends on the preferred stock for the years 1930–1939, plaintiff shows a cumulative deficit in 1939 if calculated from the inception of the business. The plaintiff, having interpreted the agreement as imposing no liability on it until this deficit was

erased, did not accrue[21] interest on the advances made by V.G.F. pursuant to the guaranty agreement on its books. Nor did it take any deduction for interest on its Federal income tax returns for any year prior to 1940.[22] In that year, the plaintiff accrued $537,468.75 as interest on the advances.[23] However, the amount of the debt was adjusted and reduced as of April 30, 1943 so that if the accrual of interest in 1940 was proper, the amount deductible from the plaintiff's Federal income tax was reduced to $451,690.21, which sum was actually paid to A.K.U. and claimed as a deduction.[24]

The Commissioner of Internal Revenue disallowed the deduction for interest by denying a claim for refund of taxes paid pursuant to a statutory notice of deficiency except to the extent of $32,459.98. This sum was allowed as an interest accrual, and represented the annual increment of interest for 1940, if interest accrual was permitted, but required to be made annually.[25]

Stock of the Company would be due and payable on January 1, 1926, and that in accordance with the customary American practice, it would be necessary to declare the dividend to stockholders of record ten days prior thereto. He further stated that the company did not have earnings available to pay such dividend, and that accordingly pursuant to the agreement of guaranty dated July 16th 1925, between the Company and Vereinigte Glanzstoff Fabriken Aktien Gesellschaft, and J. P. Bemberg Aktien Gesellschaft, the latter Companies would advance to this Corporation on or before December 25, 1925, the sum of $122,500, being the semi-annual dividend of 3½% upon the $3,500,000 preferred stock of this Corporation.

"On motion duly made and seconded, it was unanimously

"Resolved that a dividend of 3½% be declared to the holders of record on December 19, 1925 of the $3,500,000 Preferred Stock of this Corporation, out of the moneys advanced to this Corporation pursuant to the agreement of guaranty dated July 16, 1925, between this Corporation and Vereinigte Glanzstoff Fabriken Aktien Gesellschaft and J. P. Bemberg Aktien Gesellschaft.

"There being no further business to come before the meeting, it was adjourned.

"(S)  W. Langenbruch
    Acting Secretary"

Counsel for the government conceded similar resolutions to Plaintiff's Exhibit 2 were adopted for each payment in question, T–R pp. 43–44, 173.

17. 8 Del.Corp. Law Ann. § 170.

18. T–R p. 33.

19. Plaintiff's Exhibit 2, see n. 16.

20. Plaintiff's Exhibit "AA".

21. The taxpayer keeps its books and files its income tax return on the accrual basis of accounting and reports its income on a calendar year basis (admitted in pleadings, Complaint par. 5, Answer par. 1).

22. T–R pp. 23, 48–49.

23. T–R p. 49.

24. Stipulation of Facts, par. 7; Exhibit "C" to Exhibit "B" attached to Complaint.

25. Admitted in pleadings.

This action results from the Commissioner's denial of the major portion of the interest deduction.

The government contends the amount of the repayment to A.K.U., the assignee of the guarantors, over and above the amount originally advanced to the taxpayer during the years 1925 through 1929 was payment of a dividend rather than interest.

The government and the taxpayer stipulated the German corporations made advances to the plaintiff to pay semi-annual dividends in the amount of $796,-250 under the terms of the agreement.[26] It is not disputed these funds were used by the taxpayer to pay the dividends in question. Nor is it controverted the German corporations and the taxpayer entered into the agreement of July 16, 1925, guaranteeing dividends to the preferred stockholders of American Bemberg, in order to attract American capital into the new company. On these facts, it is concluded the amount of the repayment over and above the sum originally advanced constitutes interest, as per the agreement, on loans made by the German guarantor to the taxpayer.

This conclusion is not altered because reimbursement was conditioned so as to be contingent. "A loan is no less a loan because its repayment is made contingent." United Gas Improvement Co. v. Commissioner of Internal Revenue, 3 Cir., 240 F.2d 312, 318, citing with approval Island Petroleum Co. v. Commissioner of Internal Revenue, 4 Cir., 1932, 57 F.2d 992, 994.

Having determined part of the payment to A.K.U. was interest, it must be decided whether such interest should have been accrued by the taxpayer year by year from the respective times the original advances were made.

■ Generally, a corporate taxpayer on an accrual basis must take its interest deductions ratably throughout the period during which it is liable for interest. However, where the obligation to pay interest is subject to the happening of a later event, the interest may not be accrued because there can be no accrual of a liability while it is contingent.[27]

Whether the liability for interest by American Bemberg to the assignee of the foreign guarantor was absolute or contingent depends upon the meaning to be given the third paragraph of the guaranty agreement of July 16, 1925. If this paragraph is completely unconditional as regards the payment of interest, although conditional with respect to payment of principal, the taxpayer should have made annual interest accruals.

The government stresses the conditions set forth in the third paragraph of the guaranty agreement are conditions to "reimbursement" and not conditions with respect to payment of interest. It is often difficult to determine the meaning of a word as it is used in an agreement. The meaning of "reimbursement" depends upon its context, the nature of the business in hand, the purpose and interest of the parties to the agreement, and any other relevant circumstances.[28]

The agreement provides the German corporations shall "* * * be entitled to be reimbursed directly by the American corporation for any and all such payments made by Glanzstoff and/or Bemberg pursuant to said guaranty, together with interest at the rate of 5% per annum. * * *" No dispute arose between the parties as to the interpretation of the agreement until 1939, although the agreement was made in 1925. During the interval between 1925 and 1939, interest was neither demanded by the guarantor, or paid by the taxpayer. The failure to demand

26. Stipulation of Facts, par. 6; Complaint, par. 7.

27. Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 270.

28. 3 Corbin on Contracts, § 549.

or pay interest would indicate both the guarantor and the American taxpayer interpreted the agreement as conditioning not only repayment of principal, but also the payment of interest.

██ In 1939 there was a demand for repayment which was resisted by the taxpayer.[29] However, there is no indication such demand was solely for interest or solely for principal. Even when there was a difference of opinion between the parties, both apparently agreed interest and principal were to be treated similarly. Where the "* * * conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation." Restatement, Contracts § 235(e). See, Natco Corporation v. United States of America, 3 Cir., 240 F.2d 398. On the basis of the language employed in the agreement and the interpretation of the agreement by the parties as exhibited by their conduct subsequent to their entry into the agreement, it is concluded payment of interest was subject to the same conditions as repayment of principal.

██ Did the conditions attached to the repayment of principal and interest to the guarantor justify the failure to annually accrue interest on the advances? The controlling legal principles are well settled:

"In the case of a taxpayer on the accrual basis of accounting an item of expense is to be regarded as incured, and hence deductible as accrued, only in the year when the taxpayer's liability to pay it becomes definite and absolute, whether or not it is presently paid or payable. On the other hand if the liability to pay the item of expense is wholly contingent upon the happening of a subsequent event the item cannot be regarded as incurred or deductible as accrued until the year in which by the occurrence of the event the contingent liability becomes an absolute one. Because interest is compensation for the use or forbearance of money it ordinarily accrues as an item of expense from day to day even though its payment may be deferred until a later date. But this is not true if the payment is not merely deferred but the obligation to pay at all is wholly contingent upon the happening of a later event as, for example, the subsequent earning of profits. In the latter case, the interest may not be regarded as an accrued expense until the year in which, by the earning of the profits, the contingency is satisfied and the obligation to pay becomes fixed and absolute." Pierce Estates v. Commissioner of Internal Revenue, 3 Cir., 1952, 195 F.2d 475, 477.

See Natco Corporation v. United States of America, 3 Cir., 240 F.2d 398.

Reimbursement could not be made until and unless the regular dividend for the current semi-annual period was declared upon the outstanding preferred stock and sufficient sums for the payment thereof set aside; nor could reimbursement to the guarantor be made except out of the profits of American Bemberg. The declaration of the semi-annual current dividend, the setting aside of a sufficient sum to pay it, and the existence of profits, were the conditions which had to be met before the liability to pay principal and interest became absolute. These conditions rendered the obligation to repay principal and interest contingent until such time as they were satisfied.[30] The taxable year

---

29. T–R pp. 24–30, 35.

30. Natco Corporation v. United States of America, 3 Cir., 240 F.2d 398; Pierce Es-

tates v. Commissioner of Internal Revenue, 3 Cir., 1952, 195 F.2d 475.

in which the conditions were satisfied is the year in which the contingent interest liability became absolute and consequently the year in which the interest accrual had to be made for tax purposes.

The 1939 semi-annual dividend together with all remaining arrearages[31] was declared and paid in 1939. This condition having been satisfied in that year, there remains only the question of whether the condition relating to reimbursement of the guarantor out of profits was satisfied in 1939 as the government contends or not until 1940 as the taxpayer urges. The year in which this condition was satisfied depends upon the meaning of "profits" as used in the agreement.

The general meaning and usage of the term "profits", requires that profits be determined without regard to the distribution of dividends.[32] Dividends reduce the owner's equity but they are *not* an expense.[33] If "profits" is given its general meaning there were sufficient profits in 1939 from which to repay the guarantor regardless of whether "profits" is construed as meaning profits for the current year or profits from the inception of the business operation. With the existence of profits in 1939 from which to make reimbursement, the conditional obligation to repay the guarantor would have become absolute in that year.

In order to avoid the inevitable conclusion which follows from attaching the general meaning and usage to "profits", the taxpayer takes the position the word "profits" as used in the agreement means "accumulated profits" or "undistributed profits",[34] or "cumulative deficit or surplus",[35] i.e., profits remaining after dividend distributions on the preferred stock.[36] Plaintiff urges to hold against plaintiff would, (1) destroy the expressed intent of the agreement to subordinate the guarantor to the preferred stockholders; (2) do violence to the intent of the parties to the agreement as shown by their acts; and (3), ignore the fact that the semi-annual current dividend had to be deducted from profits available for reimbursement.

The agreement reflects an intent to subordinate the guarantor to the preferred stockholders. This subordination was accomplished by delaying the right of repayment in the guarantor until after the preferred stockholders received their current semi-annual dividend. There is no indication in the agreement the preferred stockholders were to maintain their superior position after receipt of the current semi-annual dividend.[37]

31. The German corporations acquiesced in the payment of dividend arrearages on the preferred stock for the years 1930 through 1939. Because of this acquiescence, it is assumed both parties contemplated payment of arrearages prior to payment of the current semi-annual dividend.

32. This was conceded by taxpayer, see T-R p. 17.

33. Emphasis in text. Finney and Miller's Principles of Accounting, Introductory (4th Ed.).

34. Plaintiff's Brief, p. 23.

35. Plaintiff's Exhibit 4.

36. At the conclusion of the calendar year 1939, American Bemberg had completed its fourth consecutive year of showing a gain. While there had been years in which taxpayer incurred sizable losses, an examination of the profit and loss statements, together with adjustments from the inception of the American corporation in 1925 up to and including 1939 reveals that gains exceeded losses in an amount sufficient to reimburse the foreign guarantor. However, if there is deducted the dividend distributions on the cumulative preferred stock for the years 1930–1939 from the amount by which the gains exceeded the losses for the entire operation of taxpayer from its inception in 1925 until 1939, there remains no "profits" from which to make reimbursement. The immediately preceding method of computation of "profits" is that urged by taxpayer.

37. Whether the preferred stockholders would maintain a preference upon liquidation because of the last clause in paragraph third is not determined.

The acts of the parties do not indicate any unusual or special meaning was to be attached to the word "profits". In fact, the record indicates the converse was true. The meaning of the word, "profits", was not questioned until 1939. In that year, the guarantor made demand for repayment[38] which was resisted by taxpayer on the ground of non-availability of profits for that purpose. In addition, in 1939, taxpayer sought the assistance of counsel as to the meaning of the word "profits" as used in the agreement.[39] Disagreement between the parties and the seeking of advice of counsel as to the meaning of the word "profits" are not acts consonant with a particular meaning affixed to the word as advocated by taxpayer.

Finally, the plaintiff urges the condition relating to payment of the current semi-annual dividend must be read jointly with the provision providing for reimbursement out of profits. The taxpayer reasons since the current semi-annual dividend had to be paid before reimbursement could be made out of profits, the usage of "profits" in the agreement contemplated only profits remaining after dividend distributions.

The agreement of July 16, 1925 does not provide the source from which dividend payments on the preferred stock should be made. However, the stock certificate[40] provides dividends were to be paid from "surplus" or "net profits" of the corporation. If "profits" as used in the agreement is defined as "net profits", it would be possible for the net profit figure to be the same after a dividend payment as before, since payment could be made out of surplus. On the other hand, if "profits" is defined as surplus, it would be possible for the surplus figure to be unchanged after a dividend distribution by reason of the dividend having been paid from net profits. Unless one assumes the untenable position that profits as used in the agreement means two things, viz. "net profits" and "surplus", or unless it is assumed "net profits and surplus" are synonymous, which assumption the court is unable to accept, the final argument of the plaintiff must fall because the reason in support of it cannot withstand close scrutiny.

The court for tax purposes is concerned with the year in which the duty to repay principal and interest was transformed from a contingent obligation to an absolute one as distinguished from the time for the physical transfer of funds from American Bemberg to the assignee of the guarantor. While there might be no funds from which to make reimbursement, because profits have been disbursed by dividend distributions, it does not mean there were not profits so as to make the obligation to make repayment absolute.

Being unable to find circumstances which indicate a departure was intended from the general meaning and usage of the word, "profits", it is concluded the ordinary meaning of language should be given the word. Restat.Contracts § 235(a); Corbin on Contracts, § 542.

The interest deduction urged by plaintiff must be denied.

An order in accordance herewith may be submitted.

38. The record, T–R pp. 26, 35, contains inadmissible hearsay evidence to the effect that such demand by the guarantor was due to pressure exerted by the German government.

39. Defendant's Exhibit 1.

40. Plaintiff's Exhibit "E".