**CENTRAL ELECTRIC & GAS COMPANY**

v.

**UNITED STATES.**

No. 263–56.

United States Court of Claims.

March 5, 1958.

James E. S. Baker, Chicago, Ill., for plaintiff. J. Dean Vail, Jr., Robert R. Frei, and Sidley, Austin, Burgess & Smith, Chicago, Ill., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

LITTLETON, Judge.

The plaintiff, Central Electric and Gas Company, brings this suit to recover $59,235.88 of Federal income taxes, together with interest thereon, which it alleges were erroneously and illegally assessed and collected for the calendar year 1949. The plaintiff claims that it should have been, but was not, permitted to deduct interest in the amount of $155,883.90 which it alleges it paid in 1949 on a Federal income tax deficiency assessed against it as transferee of the assets of a liquidated subsidiary. The plaintiff says that such a deduction is properly allowable under section 23(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23

(b).[1] The Government urges that this interest is not deductible, because (1) the obligation is not that of the plaintiff and (2) the interest was not "paid" by the plaintiff.

On September 20, 1944, the plaintiff entered into an agreement with Continental Gas & Electric Corporation, hereafter referred to as "Continental," which at that time owned all the outstanding capital stock of Iowa-Nebraska Light and Power Company, hereafter called "Iowa-Nebraska." By that agreement the plaintiff agreed to purchase all of the outstanding capital stock of Iowa-Nebraska, and the sale was to be consummated on February 27, 1945, the "closing date."

Section 4 of the contract provided a formula for determining the purchase price.[2] The formula, as set out in the contract, was a set amount, i. e. $4,325,000, *plus* the difference between the assets and liabilities of Iowa-Nebraska on a certain date, or *minus* the difference between the liabilities and assets.

The mechanics of payment of the contract price were as follows: On the closing date, the stock certificates representing the shares to be sold were to be delivered to the buyer, and concurrently with such delivery, the buyer (the plaintiff herein) was to deliver to the seller a cashier's check for the set amount, i. e., $4,325,000, plus or minus the amount by which "the purchase price is to be adjusted because of the current assets and liabilities of Iowa-Nebraska." This plus

---

[1]. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
* * * * *
"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter."

[2]. Section 4 in pertinent part reads as follows:
" * * * Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller all of the outstanding capital stock of Iowa-Nebraska, consisting of 33,684 shares of common stock of the par value of $100 each, for the price of $4,325,000, *plus* the amount by which the current assets of Iowa-Nebraska at the close of business on the day prior to the closing date shall exceed the current liabilities of said company at that time, or *minus* the amount by which such current liabilities shall exceed such current assets. The amount of such current assets and current liabilities shall be determined as hereinafter provided."

or minus figure was, at this time and solely for the purpose of delivery of the check on the closing date, to be estimated by the seller, Continental. We assume that the parties complied with these contract provisions.

The plus or minus figure, estimated in the manner and for the purposes explained above, was to be adjusted in the following way. Within sixty days after the closing date, a firm of public accountants, Arthur Andersen & Co., was to determine and to make a report of the amounts of such current assets and current liabilities. Section 4(d) of the contract lists items to be included in the current assets and current liabilities in order to arrive at the plus or minus figure. Certain items, such as Federal income and excess profits taxes, could not be determined with any great degree of certainty. The parties recognized this, and provided that the liabilities should include Federal income and excess profits taxes already accrued in the accounts of Iowa-Nebraska, and an estimated amount which would be reserved for such purposes. The accounting firm determined that there was an accrued liability for Federal income and excess profits taxes of Iowa-Nebraska of $246,236.75, and that sum was reserved on the books of Iowa-Nebraska for

payment of those taxes.[3] The parties also realized that even these amounts accrued or reserved on the books of Iowa-Nebraska might not be sufficient to cover the ultimate tax liability of Iowa-Nebraska for its operations for the period prior to the closing date. The parties wanted the purchase price to be the set amount *plus* the excess of assets over liabilities or *minus* the excess of liabilities over assets. Since one of the liabilities, i. e., Federal income and excess profits taxes, could not be conclusively determined, the parties provided in section 11 of their contract for a further adjustment in the purchase price, if it should ultimately become necessary.[4] Section 11 provided that, if Federal income and excess profits tax liabilities (including interest thereon) should thereafter be assessed with respect to the taxable periods of Iowa-Nebraska prior to the closing date in an amount in excess of the amounts accrued and reserved on the books of Iowa-Nebraska for that purpose, Continental should reimburse the plaintiff or Iowa-Nebraska for the amount in excess of the amount so accrued or reserved. The terms of section 11 indicate that this was an adjustment to the purchase price, because it provided that should the amounts so accrued and reserved be in excess of

---

3. Subsequently, payments of taxes were made in the amount of $153,647.06 for the calendar year 1944 and in the amount of $64,546.84 for the taxable period January 1 to February 26, 1945. These payments were made in the consolidated Federal income and excess profits tax returns filed on behalf of the affiliated group of corporations of which Iowa-Nebraska was a subsidiary at that time. These payments left an excess in the amount reserved on the books of Iowa-Nebraska in the amount of $28,042.85.

4. Section 11 of the contract in material part was as follows:
"If with respect to the operations of Iowa-Nebraska for any period prior to the closing date, Buyer or Iowa-Nebraska shall be required to pay Federal income and excess profits taxes in an amount greater than the amounts accrued or reserved for such taxes in the final computation of current liabilities by Arthur Andersen & Co. as provided in Section 4

(c) hereof, *Seller shall reimburse Buyer or Iowa-Nebraska for the amount so paid in excess of the amount so accrued or reserved.*

"In case the amounts accrued or reserved for Federal income and excess profits taxes in the final computation of current liabilities by Arthur Andersen & Co., under Section 4(c) hereof, shall exceed the amounts paid in final settlement of all liability for such taxes of Iowa-Nebraska for all periods prior to the closing date, Buyer agrees to pay or to cause Iowa-Nebraska to pay to Seller an amount equal to such excess.

"For the purpose of this Section 11, Federal income and excess profits taxes paid by Buyer or Iowa-Nebraska with respect to the operations of Iowa-Nebraska prior to the closing date shall include any interest or penalties paid thereon and shall be reduced to the extent of any interest received on any refund of such taxes * * *." [Italics supplied.]

the ultimate tax liability of Iowa-Nebraska, the buyer was to refund that excess to the seller. This reciprocal provision was necessary in order to maintain the price formula the parties had agreed upon.

The report of Arthur Andersen & Co. was presented to to plaintiff and Continental on April 9, 1945. We do not know if any objections were taken to the report, as might have been done under the terms of the contract, and we assume that at the expiration of 15 days after the report was filed, the report became conclusive and binding on the parties as the contract provided. Within ten days after the report became conclusive and binding on the parties, they had to make any adjustment to the estimated plus or minus figure which the report showed was necessary, and such adjustment in turn made an adjustment to the purchase price. However, even this adjusted contract price was not necessarily the ultimate contract price, because further adjustments as contemplated by section 11 of the contract might, and did, later become necessary.

Deficiencies in the Federal income and excess profits taxes of Iowa-Nebraska for the years 1940 and 1941 were later determined by the Federal taxing authorities. Iowa-Nebraska had been liquidated into the plaintiff and dissolved on the closing date, so the plaintiff, as the transferee of the assets of Iowa-Nebraska within the meaning of section 311 of the Internal Revenue Code of 1939, 26 U.S. C.A. § 311,[5] received the deficiency letter in March of 1946. The plaintiff filed a petition with the Tax Court protesting the deficiency, and in November of 1949 it was decided that the unpaid tax liability of the plaintiff, as transferee, was $337,366.92, plus interest of $155,883.90, which interest is the subject of this litigation.

After the Tax Court entered its decision, Continental became liable, under the terms of section 11 of the sales contract, to reimburse the plaintiff for the "amount so paid in excess of the amount so accrued or reserved" on the books of Iowa-Nebraska for the payment of such tax liabilities. The Government concedes that Continental, in this situation, became obligated under the contract to refund to the plaintiff a part of the purchase price paid by the plaintiff to Continental for the Iowa-Nebraska stock. The money accrued and reserved on the books of Iowa-Nebraska for Federal income and excess profits taxes had, in the meantime, been reduced by other tax payments to an amount of $28,042.85, which the plaintiff still retained. The tax deficiency plus interest thereon was in the total amount of $493,250.82, which meant that Continental owed the plaintiff $465,207.97 ($493,250.82–$28,042.85).

Had Continental actually paid the $465,207.97 to the plaintiff, and had the plaintiff in turn paid the total tax deficiency and interest thereon ($493,250.82), there would be little question as to the plaintiff's right to deduct the interest. However, that procedure was not followed. Instead, the plaintiff requested Continental to pay the deficiency and interest on plaintiff's behalf and with the money which Continental owed to plaintiff. On November 18, 1949, two days after the Tax Court had rendered its decision, Continental, acting at the

---

5. Section 311 of the International Revenue Code of 1939 reads in part as follows:

"*Transferred assets*

"(a) *Method of collection.* The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after no-

tice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) *Transferees.* The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter."

plaintiff's request, did pay the deficiency and interest thereon. Continental paid the entire amount of the deficiency and interest, and since the plaintiff still held the $28,042.85 reserved on the books of Iowa-Nebraska, the plaintiff became indebted to Continental for that sum. The plaintiff paid the $28,042.85 to Continental's successor on June 14, 1950, in accordance with the second paragraph of section 11 of the contract which required any excess of the reserved amount over the ultimate tax liability to be refunded to the seller. Actually, this was not an excess over the ultimate tax liability, but was really a debt which the plaintiff owed to Continental because Continental had advanced that amount of money to pay part of the tax deficiency and interest. Therefore $28,042.85 of the tax deficiency and interest, which Continental paid at the plaintiff's request, was paid with funds advanced by Continental and later repaid to it by the plaintiff, and the balance of the deficiency and interest in the amount of $465,207.97 was paid with funds which Continental already owed to the plaintiff under the terms of its contract.

Continental claimed a deduction for the interest paid on Iowa-Nebraska's tax deficiency, but the deduction was disallowed on the ground that the tax and interest so paid was, for Federal income tax purposes, a refund of a portion of the selling price under the rule of Koppers Company, 1944, 3 T.C. 62, affirmed, 3 Cir., 151 F.2d 267. Subsequently, the plaintiff made the same claim for itself and the Government disallowed it. One of the reasons which the Government advances for this position is that Continental, under the terms of the contract, agreed to pay the taxes in question and the obligation was, therefore, not that of the plaintiff. The Government says that its contention is consistent with the position it took in regard to the disallowance of the deduction to Continental, because, the Government argues, that disallowance was not based upon a decision that the obligation was not that of Continental but upon the theory that the interest was paid, not as interest, but as a refund of part of the purchase price, allowable only as a capital loss and not as an interest deduction.

We are of the opinion that the obligation for the tax deficiency and the interest thereon was the obligation of the plaintiff. The terms of the contract and the law clearly support this conclusion. As indicated in the above discussion of those contract terms, the parties intended to provide a formula to determine the purchase price, and the taxes here involved were merely an item in that formula. The plaintiff, in purchasing Iowa-Nebraska, received all the assets and liabilities of Iowa-Nebraska, including the liability for taxes for periods prior to the closing date. Continental agreed to reimburse the plaintiff for such taxes, not because it was Continental's tax obligation, but because the parties had agreed to a purchase price which varied with the ultimately determined amount of liabilities of Iowa-Nebraska. In order to keep the purchase price constant in terms of the formula established by the parties, the purchase price had to be changed when one of the factors in the formula, here the liability for additional taxes, changed.

The plaintiff became liable for the taxes as transferee of the assets of the liquidated corporation within the meaning of section 311 of the Internal Revenue Code of 1939. The Government recognized this fact when it sent the notice of a proposed deficiency to the plaintiff rather than to Continental. Had these taxes and the interest thereon not been paid, it would have been the assets of the plaintiff which would have been subject to a lien under section 3670 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3670, and not the assets of Continental. The plaintiff, as transferee, took the assets encumbered with the liabilities, and the liabilities became the obligations of the plaintiff. Any interest subsequently accruing thereon was interest on the plaintiff's obligations. For a discussion of the nature of a transferee's rights

and obligations, see the Koppers cases cited in this opinion.

■ The requirements for an interest deduction under section 23(b) of the Internal Revenue Code of 1939 are that the obligation or indebtedness be that of the taxpayer and that the interest thereon be paid or accrued by the taxpayer within the tax year. The Government says that in any event the tax and interest were not, in the instant case, *paid* by this taxpayer. We cannot agree with this.

The plaintiff should not be deprived of its right to take a deduction for the interest merely because Continental actually made out the check to the Collector of Internal Revenue instead of paying the money to the plaintiff and having the plaintiff pay its taxes as might have been done. Continental was acting at the request of the plaintiff, and made the payment with funds which it owed in substantial part to the plaintiff. As to a small part of the payment, the $28,042.-85, Continental loaned the money to the plaintiff and was subsequently reimbursed. We believe that Continental, in making this payment, was acting as the agent of the plaintiff. The procedure followed in making the tax payment in question was reasonable under the circumstances. Additional provisions in section 11 of the contract demonstrate why this procedure was a reasonable method of handling the tax payment.[7]

During the years of the tax deficiencies involved in the instant suit, Iowa-Nebraska belonged to an affiliated group of corporations which were permitted by the Internal Revenue Code to file consolidated Federal income and excess profits tax returns, and the plaintiff agreed, in its sales contract, to cooperate in furnishing necessary documents and data and in paying Iowa-Nebraska's proportionate share of such taxes to Continental or its parent corporation for the purpose of making those consolidated returns. In other words, had the plaintiff received the money from Continental for these additional taxes, it would have been obligated to turn the money over to Continental or its parent corporation so that a consolidated return could be made for the affiliated group of corporations to which Iowa-Nebraska belonged during the tax years here in question. It was perfectly logical, therefore, for the plaintiff to tell Continental to take the money which was owed to the plaintiff and make the tax payment itself. The actual payment of taxes and interest thereon by a third party does not destroy the entitlement to an interest deduction, when the taxpayer's obligation is paid out of funds furnished by it, held for its account, or advanced to it. Cooledge v. Commissioner, 40 B.T.A. 1325; Estate of Movius v. Commissioner, 22 T.C. 391; Mann v. Commissioner, 33 B.T.A. 281.

In the present case, the interest in question was paid with funds which clearly belonged to the plaintiff under the terms of its contract. An interest deduction has been allowed to a taxpayer in a situation where the taxpayer was merely a third party beneficiary to a contract under which the seller agreed to save harmless the buyer and the taxpayer from additional taxes which might later

7. This language reads in material part as follows:

"It is understood that Seller and Iowa-Nebraska are among the members of an affiliated group of corporations which under the Internal Revenue Code is permitted to file consolidated Federal income and excess profits tax returns. Buyer agrees that after the closing date it will cooperate and will cause Iowa-Nebraska to cooperate with Seller and any parent corporation of Seller, and its or their agents and representatives, in filing any consolidated tax returns for any period or periods for which Iowa-Nebraska is permitted or required by the Internal Revenue Code to be included in consolidatd tax returns with Seller. Buyer also agrees that it will cause Iowa-Nebraska and its officers to execute all consents, tax returns and other documents and to furnish all information and data necessary for the filing of said consolidated tax returns; and that upon request it will either cause Iowa-Nebraska to pay or itself will pay to Seller (or to a person designated by Seller) the proportionate share of Iowa-Nebraska of the taxes determined to be due on said consolidated tax returns."

be assessed and collected. Leward Cotton Mills, Inc., v. Commissioner of Internal Revenue, 4 Cir., 1957, 245 F.2d 314.

The Government argues alternatively that even if we hold the liability to be the plaintiff's, the plaintiff is entitled under the Koppers decisions, supra, to deduct only the interest which accrued on the deficiencies *after* the transfer of assets to it was effected, i. e. after the closing date. The plaintiff says that *all* of the interest involved herein did accrue on the deficiency for Federal income tax purposes *after* the date on which the assets of Iowa-Nebraska were transferred to the plaintiff and that this is so because such deficiencies and interest thereon do not "accrue" while the tax liability is being contested, and the liability was here being contested until the date on which the Tax Court rendered its decision. In support of this position, the plaintiff cites Allegheny Steel Company v. United States, 18 F.Supp. 398, 84 Ct.Cl. 514; and Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L. Ed. 270.

The above cases relied on by the plaintiff involve only the problem of *when* interest can be deducted, and the "accrual" involved in those cases is merely the technical accounting concept of when, i. e. in which tax year, the interest can be deducted by the taxpayer who has paid such interest on its obligation. Those cases do not provide the answer to the problem of *who* can deduct the interest and from what date.

The interest here in question can be deducted in the tax year 1949, the year when the amount of the tax liability for 1940 and 1941 was finally determined by the Tax Court, but we must look to the Koppers decisions, supra, to determine who can deduct the interest in 1949 and from what date.

The Koppers cases say that the transferee, upon the date of the transfer of the assets, takes over the liabilities of the transferor; those liabilities are henceforth those of the transferee, and any interest which subsequently "accrues" against those liabilities can be deducted by the transferee. The "accrual" referred to in the Koppers cases goes to the heart of the philosophy of the obligation for interest. Interest is paid because the obligor has deprived the obligee of the use of his money. See Uintah and White River Bands of Ute Indians v. United States, 1957, Ct.Cl., 152 F.Supp. 953. Until the date of the transfer of the assets of Iowa-Nebraska to the plaintiff, it was Iowa-Nebraska who was depriving the Government of the tax money represented by these later assessed deficiencies, and the fact that these deficiencies were not then known is immaterial. Therefore, the interest which was accumulating on the tax deficiencies at that time was the interest of Iowa-Nebraska. Iowa-Nebraska did not pay that interest. It was paid by the plaintiff herein, but not as interest because up to the closing date Iowa-Nebraska was the one who was depriving the Government of the taxes. It was paid by the plaintiff as a part of the cost basis of the assets it was purchasing. After the date of the transfer of assets, i. e. the closing date, it was the plaintiff who was depriving the Government of the use of its money, and the interest on the tax deficiencies which accumulated after that date was paid by the plaintiff as interest and not as a part of the cost basis of the assets.

We conclude that the plaintiff was entitled to deduct in the year 1949 that portion of interest on these tax deficiencies which is properly allocable to the period from the closing date to the date of payment in 1949, i. e. $95,682.81. Accordingly, the plaintiff is entitled to a refund of taxes in the amount of $36,359.47 with interest as provided by law, and judgment will be entered in that amount.

It is so ordered.

FAHY, Circuit Judge, sitting by designation, JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.