**AMERICAN BEMBERG CORPORATION, Appellant,**

v.

**UNITED STATES of America.**

**No. 12335.**

United States Court of Appeals Third Circuit.

Argued Feb. 3, 1958.

Decided March 14, 1958.

Petition for Rehearing Denied April 22, 1958.

Robert Ash, Washington, D. C. (Carl F. Bauersfeld, Washington, D. C., George Heftler, Union City, N. J., on the brief), for appellant.

Joseph Kooner, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Sheldon I. Fink, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

American Bemberg Corporation is a Delaware corporation and an accrual basis taxpayer. This corporation, which we shall call Bemberg or the taxpayer, appeals from a judgment of a district court denying its claim for a refund of income and excess profits taxes for 1940. The principal issue is whether the taxpayer's originally contingent obligation to pay interest on certain advances became so definite and unqualified in 1940 that the accumulated amount thereof could be claimed in that year's tax return as an accrued and deductible expense. Viewing the obligation as having become fixed before 1940, the district court decided against the taxpayer. D.C.D.Del. 1957, 150 F.Supp. 355. We now review that ruling.

The obligation here involved arose out of certain expenditures made between 1925 and 1929 for Bemberg's benefit by its principal voting stockholders, two German corporations, Vereinigte Glanzstoff Fabriken and J. P. Bemberg, Actiengesellschaft. In order to make a cumulative preferred stock issue of the taxpayer attractive to the American public, the two German corporations guaranteed the punctual payment of semi-annual dividends on that stock from July 1, 1925 to July 1, 1929. The agreement, which was in writing, provided that the sums advanced under its terms would be repaid by the taxpayer with interest at the rate of five per cent per annum. However, the obligation to repay was qualified as follows:

"* * * and to that end, it is hereby agreed that Glanzstoff and/or Bemberg shall be entitled to all accumulations of dividends upon such preferred stock which shall not have been paid by the American Corporation, and the amount of which Glanzstoff and/or Bemberg have paid to the record holders of certificates for such preferred stock pursuant to said guaranty, and it is further agreed that whenever the American Corporation declares dividends on account of any or all such accumula-tions of dividends, the same shall be paid to Glanzstoff and/or Bemberg, provided however, that no dividends shall be declared and paid on account of any such accumulation of dividends, or reimbursement made to Glanzstoff and/or Bemberg until and unless the regular dividend for the then current semi-annual period shall have been declared upon the outstanding preferred stock of the American Corporation, and a sum sufficient for the payment thereof set apart for that purpose; nor shall any reimbursement be made to Glanzstoff and/or Bemberg except out of the profits of the American Company; * * *."

Paraphrasing and construing this agreement the court below said:

"Reimbursement could not be made until and unless the regular dividend for the current semi-annual period was declared upon the outstanding preferred stock and sufficient sums for the payment thereof set aside; nor could reimbursement to the guarantor be made except out of the profits of American Bemberg. The declaration of the semi-annual current dividend, the setting aside of a sufficient sum to pay it, and the existence of profits, were the conditions which had to be met before the liability to pay principal and interest became absolute. These conditions rendered the obligation to repay principal and interest contingent until such time as they were satisfied. The taxable year in which the conditions were satisfied is the year in which the contingent interest liability became absolute and consequently the year in which the interest accrual had to be made for tax purposes."

The taxpayer does not challenge this analysis.

■ What actually happened was this. The German corporations advanced Bemberg $796,250, to meet its dividend obligations to preferred stockholders between 1925 and 1929. From 1925 to

1935 Bemberg suffered annual losses except during 1928 and 1933. It earned a profit in each of the years from 1936 to 1940. Excluding dividends accumulated but not paid on preferred stock from 1930 to 1939, profits as of 1939 were sufficient to enable Bemberg to repay with interest the advances made by the German corporations. But if the amount of unpaid dividends accumulated on the stock since 1930 should be deducted from income before a profit is recognized, the taxpayer would still show a cumulative deficit at the end of 1939. The addition of further profits earned in 1940 would be necessary to repay all past dividends and the sums owed to the German corporations. Believing this latter analysis to be correct, the taxpayer accrued in 1940 the entire obligation for interest since 1925 and claimed that amount as a 1940 income tax deduction. The taxing authorities, however, took the view, to which the district court was persuaded, that "profits", such as would fix the interest obligation, existed in 1939, so that only the current annual increment of interest could thereafter be deducted for 1940.

Thus, the matter in dispute is the meaning of language in the agreement between the taxpayer and the German corporation; more particularly, whether the term "profits" was so used by the parties as to comprehend the excess of income over expenses and losses without reference to dividends. The dispute is even narrower than this, for the taxpayer concedes that the existence and amount of profits normally are determined without regard to dividends and undertakes to read into the present arrangement an agreement upon an extraordinary accounting treatment of unpaid dividend obligations as losses which must be offset before there is a profit. The taxpayer relies on two facts, the cumulative character of the dividend obligation and the fact that the parties agreed that a current dividend must be paid before the obligation to the German corporation should become unqualified.

We think the terms of the German guaranty are rather plainly inconsistent with the extraordinary interpretation the taxpayer urges. We already have quoted a provision of the basic agreement which seems to accord the German lenders priority, after payment of a current semi-annual dividend, over Bemberg's preferred stockholders, impressing the lenders' claims upon profits, normally available to satisfy any dividend claims of preferred stockholders accumulated over the years. These provisions make sense only if the profits to which the parties refer exist as such before the cumulative obligations for past dividends are satisfied.

It is also urged that the provision which keeps the obligation to the German lenders contingent until a semi-annual dividend shall be paid necessarily implies that prior cumulative dividend obligations must also be satisfied to make the obligation to the guarantors unqualified. But this contention would have force only if we should accept the premise that a Delaware corporation cannot declare and pay to its preferred stockholders the amount of its current dividend obligation until cumulative obligations to them for past years shall have been paid. But no authority is cited in support of such a proposition and it appears to be contrary to the corporation law of Delaware. See the elaborate discussion of the Delaware statutes in Weinberg v. Baltimore Brick Co., Del.1955, 114 A.2d 812.

These observations seem sufficient, when read with the careful analysis which appears in the opinion of the district court, to dispose of the principal argument on this appeal.

The taxpayer also attempts to make another point which it did not undertake to establish in the district court. It urges here for the first time that its obligation to repay the German lenders did not become fixed as early as 1939 because it was then resisting the claims of the lenders. Whether such a contention concerning 1939 could help the taxpayer in his affirmative undertaking to prove

that the obligation accrued in 1940, we need not consider. Any legal significance the taxpayer's 1939 conduct might have would depend upon the nature, the grounds and the extent and duration of its alleged resistance to the lenders' claims. A contention which requires such factual elaboration cannot be introduced into this case as a new matter on appeal.

The judgment will be affirmed.