Robbins Tire and Rubber Company, Inc., Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 2287–67. Filed November 24, 1969.

*Charles A. Poellnitz* and *James C. Herndon*, for the petitioner.
*Robert T. Hoffman*, for the respondent.

SUPPLEMENTAL OPINION

FEATHERSTON, *Judge:* In the original opinion in this proceeding (52 T.C. 420), promulgated on June 12, 1969, we held (1) that all payments made by petitioner pursuant to the offers in compromise and the collateral agreement should be credited against its tax liabilities in accordance with Rev. Rul. 58–239, 1958–1 C.B. 94, and (2) that the amount of interest deductible by petitioner, an accrual basis taxpayer, was to be measured by the payments it made, because "the amount of interest which is discharged by application of the procedure of Rev. Rul. 58–239, cannot be 'determined with reasonable accuracy' until actual payment is made." Cf. *Burlington-Rock Island Railroad Co.* v. *United States,* 321 F. 2d 817 (C.A. 5, 1963), certiorari denied 377 U.S. 943 (1964) ; *American Bemberg Corp.* v. *United States,* 150 F. Supp. 355 (D. Del. 1957), affd. 253 F. 2d 691 (C.A. 3, 1958), certiorari denied 358 U.S. 827 (1958) ; *Guardian Investment Corp* v. *Phinney,* 253 F. 2d 326 (C.A. 5, 1958).

We directed that decision be entered under Rule 50. Each party sub· mitted a "Computation for Entry of Decision" showing an overpayment of tax, respondent's in a smaller amount than petitioner's. The differences in the computations arise from three sources: (1) *De minimis* mathematical errors, which have been agreed upon by the parties, (2) respondent's failure to treat the monthly payments of $10,000 each, made during the first 6 months of petitioner's taxable year 1964, as having been paid under the offers in compromise, and (3) respondent's failure to treat part of the payment of $246,450 by Florco as interest paid by petitioner. In addition to resolving these differences, we are asked to decide the issue presented by respondent's claim that "no part of [the overpayment] is refundable under the terms of the two offers in compromise."

1. *The Six $10,000 Payments.*—The parties agree that petitioner made the following payments under the offers during its taxable year 1964: One payment of $538,593.44 made on March 31, 1964, and six monthly payments of $10,000 each, made from April 1964 through September 1964. Petitioner, however, contends that the amount paid under the offers during its taxable year 1964 also includes the $60,000 which it had paid at the rate of $10,000 per month from October 1963 through March 1964 pursuant to the trust agreement of November 1, 1956. Respondent, on the other hand, argues that these six monthly payments are to be credited not under the offers, but rather under the trust agreement prior to its amendment, i.e., "first, to any assessed excise tax liability of Taxpayer, second, to any asserted income tax liability of Taxpayer, third, to any interest on said excise tax liability,

fourth, to interest on any asserted income tax liability, and lastly, to any penalties determined to be due."

Although the disputed payments, at the times they were made, were credited under the unamended version of the trust agreement, the parties obviously intended them to be reallocated upon the Government's acceptance of the offers, and credited pursuant to the offers. The offers themselves, as well as the testimony and other exhibits in the record, clearly demonstrate that this is so.

The offers, filed on March 19, 1964, state that the sum of $50,000 then "on deposit" with the district director was to be applied against the amount due under the offers. We are compelled to conclude that this sum represents the amounts paid by petitioner to the district director during the first 5 months of its taxable year 1964. (The sixth payment at issue here, that of $10,000 for March 1964, was tendered after the final offers were prepared, but before they were submitted, and therefore was not recited in them as being "on deposit.") Respondent can give no other explanation for the source of the amount "on deposit." In addition, petitioner's witness testified that the amounts paid under the offers included the payments made during the first 6 months of the taxable years 1964; this reliable and reasonable testimony was neither subjected to cross-examination nor contradicted by any other testimony or evidence, and therefore must be accepted. *Wooster Rubber Co.* v. *Commissioner*, 189 F. 2d 878, 887 (C.A. 6, 1951); *Herbert* v. *Riddell*, 103 F. Supp. 369, 389 (S.D. Cal. 1952). Finally, in our original opinion we found, on the basis of the whole record and in accordance with requested findings of *both* parties, that the payments under the offers during the taxable year 1964 totaled $658,593.44, which figure includes the amount here in dispute.[1] We have not been persuaded to alter that finding.

2. *The Florco Payment.*—On April 24, 1964, Florco paid $246,450 to the district director pursuant to *its* offer in compromise of an asserted transferee liability arising from its purchase from petitioner on April 24, 1956, of all the stock of Robbins Floor Products, Inc. The payment consisted of a principal amount of $232,500 and interest accrued thereon, from the date of the offer to the date of payment, of $13,950. Petitioner contends that this payment by its transferee should be credited against its tax liabilities according to the procedure set forth in Rev. Rul. 58-239, and that the amount thus applied to interest liabilities is deductible by it. In other words, petitioner

---

[1] Our statement in the last paragraph of our opinion, 52 T.C. at 440, that "the payments made under the November 1, 1956, trust agreement prior to its amendment should be credited in accordance with paragraph (3)(a) thereof," is not inconsistent with this finding. The crediting procedure in par. (3)(a) was not intended to be applied to amounts paid under that agreement but reallocated as a part of the settlement agreed to by the parties.

desires to have the same treatment accorded to Florco's payment as is accorded to its own payments under the offers.[2]

It is well established that assertion of liability against a transferee is a secondary means of enforcing the primary obligation of the transferor, 9 Mertens, Law of Federal Income Taxation, sec. 53.05, and that payments made by the transferee not only satisfy its secondary liability, but simultaneously discharge a like amount of the primary obligation. *Id.* at sec. 53.25. Thus, the payment by Florco must be credited against petitioner's tax liabilities,[3] but only to the extent of the $232,500 principal amount of Florco's liability as transferee, because the $13,950 of interest was an obligation of Florco separate and distinct from petitioner's liabilities. Furthermore, the payment should be credited in the same fashion as a payment by petitioner, i.e., 55 percent to the income tax liabilities and 45 percent to the excise tax liabilities, and then in accordance with Rev. Rul. 58–239.

Applying Florco's payment in this manner will result in the discharge of interest liabilities of petitioner. However, their discharge does not generate a deduction for petitioner. The payment in question was made by a taxpayer unrelated to petitioner, and a deduction under section 163(a)[4] for interest paid by a third party is not allowable unless the taxpayer has parted with some consideration. Yet, petitioner did not reimburse Florco for the latter's payment, nor is there evidence that petitioner was obligated to indemnify Florco; although there is mention in the record of a "right of setoff" Florco had against the amounts due on its note to petitioner, it has not been shown that Florco's payment gave rise to a claim by it against petitioner so as to enable petitioner to accrue such a liability (especially in light of the fact that the note had been fully paid off prior to the date of the payment on the transferee liability). Finally, the payment was not made pursuant to any contractual obligation constituting part of the consideration received by petitioner upon the sale of its subsidiary, see *Central Electric & Gas Co.* v. *United States*, 141 Ct. Cl. 658, 159 F. Supp. 353 (1958), nor was it made with funds furnished by petitioner, held for its ac-

---

[2] In its supplemental memorandum filed subsequent to the hearing, petitioner devoted much of its argument on this issue to an attempt to show that Florco is not entitled to any interest deduction by virtue of its payment and that, therefore, petitioner is entitled to a deduction. This argument is clearly untenable. Even if Florco would not be entitled to an interest deduction, that would not automatically generate such a deduction for petitioner.

[3] Respondent's argument that the payment by Florco is applicable to the taxable years 1952 through 1956, which years were excluded from petitioner's offers, is without merit, for it is clear from the record, and we so found in our original opinion, that the income tax liabilities for those years were paid in full by altering credits previously applied to excise taxes. Therefore, the payment by Florco can in no way be applicable to those liabilities.

[4] All section references are to the Internal Revenue Code of 1954, as amended.

count, or advanced by it. See generally *Estate of Mary Rumsey Movius*, 22 T.C. 391 (1954). For these reasons petitioner may not deduct the interest liabilities discharged by Florco's payment. See *Hanna Furnace Corp.* v. *Kavanagh*, an unreported case (E.D. Mich. 1950, 42 A.F.T.R. 1312, 50–2 U.S.T.C. par. 9443).

3. *Refundability of the Overpayment.*—Both parties' computations show an overpayment of tax by petitioner for its taxable year 1964. However, respondent contends that "no refund of the overpayment resulting from the opinion of the court may be made to petitioner," relying on certain language of the offers in compromise.

Both parties set forth able arguments for and against the proposition that a refund of the overpayment is barred. However, our jurisdiction in this matter is limited by section 6512(b)(1), which provides in pertinent part as follows:

If the Tax Court finds * * * that the taxpayer has made an overpayment of income tax for the same taxable year * * * in respect of which the Secretary or his delegate determined the deficiency, * * * the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

This Court's jurisdiction is limited by statute. Sec. 7442. Not only is there no statutory provision authorizing us to order or deny a refund, but section 6512(b)(1) strongly suggests that we may not. Indeed, the cases hold that our power is limited to determining the existence *vel non* and amount of any deficiency or overpayment, and that the authority to order or deny a refund is solely within the jurisdiction of the Court of Claims and the District Courts. *United States ex rel. Girard Co.* v. *Helvering*, 301 U.S. 540, 542–543 (1937); *Empire Ordnance Corp.* v. *Harrington*, 249 F. 2d 680, 682 (C.A.D.C. 1957). Therefore, we do not reach the merits of respondent's contention, although we note that our conclusion does not leave the parties without a remedy. See *United States ex rel. Girard Co.* v. *Helvering, supra; Edith Stokby*, 26 T.C. 912, 913 (1956).

In order to effectuate the conclusions reached in this opinion and our original opinion,

*Decision will be entered under Rule 50.*