T.C. Memo. 1995-561

UNITED STATES TAX COURT

ESTATE OF DONALD H. RAY, DECEASED, PATRICIA G. RAY,
INDEPENDENT EXECUTRIX, AND PATRICIA G. RAY,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

CIPRIANO DOMINGUEZ AND THE ESTATE OF ISABEL DOMINGUEZ,
DECEASED, CIPRIANO DOMINGUEZ, INDEPENDENT EXECUTOR,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4582-93, 4583-93.    Filed November 27, 1995.

Thomas E. Redding, for petitioners.

Dennis M. Kelly, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CLAPP, Judge:  Respondent determined additions to

petitioners' Federal income taxes as follows:

Docket No. 4582-93 - Estate of Donald H. Ray, Deceased,
Patricia G. Ray, Independent Executrix,
and Patricia G. Ray:

| | | Additions to tax | | |
| Year | Sec. 6651(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 | Sec. 6661[*] |
|---|---|---|---|---|---|
| 1983 | -- | $1,489.00 | $27,843.54 | $8,936.00 | $7,447.00 |
| 1984 | $249.00 | 3,932.00 | 1,351.00 | 539.00 | -- |

[*] Determined as an alternative to sec. 6659.


Docket No. 4583-93 - Cipriano Dominguez and the Estate of Isabel
Dominguez, Deceased, Cipriano Dominguez,
Independent Executor:

| | Additions to tax | | | |
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 | Sec. 6661[*] |
|---|---|---|---|---|
| 1983 | $782.00 | $14,598.09 | $4,693.00 | $3,911.00 |

[*] Determined as an alternative to sec. 6659.


Respondent assessed deficiencies in income taxes attributable to the settlement of petitioners' partnership items. Separate notices of deficiency, upon which these cases are based, were issued for additions to tax. There is no dispute that petitioners settled the partnership items, and, having done so, petitioners' share of those items became nonpartnership items. Sec. 6231(b)(1)(C). The only question is whether the notices of deficiency for additions to tax were issued prior to the expiration of the applicable period of limitations for assessment. We hold that respondent issued notices of deficiency as to the additions to tax at issue in these cases prior to the expiration of the period of limitations for assessment.

All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

These cases are consolidated for trial, briefing, and opinion. Some of the facts have been stipulated and are found accordingly. We incorporate by reference the stipulation of facts and attached exhibits.

Petitioners are the Estate of Donald H. Ray (Mr. Ray), Deceased, Patricia G. Ray, (Mrs. Ray) Independent Executrix, and Patricia G. Ray, and Cipriano Dominguez and the Estate of Isabel Dominguez (Mrs. Dominguez), Deceased, Cipriano Dominguez, Independent Executor. At the time the petition was filed in docket No. 4582-93, Mrs. Ray resided in Arlington, Texas. At the time the petition was filed in docket No. 4583-93, the Dominguezes resided in Arlington, Texas.

In 1981, Mr. Ray, Mrs. Dominguez, and Robert F. Breese (Breese) began investing together in various entities. Breese is a certified public accountant with a bachelor's degree in business administration in accounting; however, he does not actively practice in accounting. They formed RDB Joint Venture (RDB), a Texas general partnership, and Breese managed RDB's investments. Mr. Ray died in December 1990, and prior to that time Mrs. Ray did not actively participate in the Rays' investments. Mrs. Dominguez died in June 1993.

RDB was a partner of Valley Cable, Ltd. (Valley Cable), a Texas limited partnership, and Valley Cable was subject to the unified audit and litigation procedures set forth in sections 6221 through 6233 (the TEFRA provisions) enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648, and amended retroactively by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 714(p)(1), 98 Stat. 494, 964. RDB was a pass-thru partner as defined in section 6231(a)(9). Mr. Ray, Mrs. Dominguez, and Breese were indirect partners of Valley Cable, as defined in section 6231(a)(10), due to their ownership interest in RDB.

In 1984, Mr. Ray, Mrs. Dominguez, and Breese were partners in 6121 Joint Venture (6121), a general partnership, and RDB transferred its interest in Valley Cable to 6121. R.D.B. Investments II, Inc., was not a partner in Valley Cable during the taxable years 1983 or 1984, and all references to R.D.B. Investments II, Inc., refer to RDB with respect to the taxable year 1983 and refer to 6121 with respect to the taxable year 1984. All actions taken in the name of R.D.B. Investments II, Inc., were intended to be treated as the actions of RDB and 6121 with respect to the taxable years 1983 and 1984, respectively. For convenience, we will refer to RDB, 6121, and R.D.B. Investments II, Inc., as RDB.

Respondent designated Valley Cable a litigation project case and assigned Valley Cable to a litigation project referred to as

Southern Cable.  Respondent assigned Peter Palka (Palka) as the project appeals officer and Albert Balboni (Balboni) as the project attorney on Southern Cable.  Thomas E. Redding (Redding) was a taxpayer representative in the Southern Cable project, and he is also counsel for petitioners in these cases.

On March 16, 1987, respondent issued to Valley Cable a Notice of Final Partnership Administrative Adjustment (FPAA) for the taxable year 1983, and on May 9, 1988, respondent issued to Valley Cable an FPAA for the taxable year 1984.  After learning that respondent was challenging the tax deductions claimed by Valley Cable, Breese took the necessary steps to include RDB in a "group" formed to challenge respondent's determinations.  Redding was counsel for that group.  Victor M. Wilder (Wilder), Tax Matters Partner (TMP) for Valley Cable, timely filed petitions for readjustment of partnership items under section 6226 with respect to Valley Cable's 1983 and 1984 taxable years.

In a letter dated March 25, 1991 (Palka letter), Palka mailed to Wilder a Form 870-L(AD), Settlement Agreement for Partnership Adjustments and Affected Items (Form 870-L(AD)), with a corresponding schedule of adjustments for Valley Cable's taxable year 1983.  A separate Palka letter sent to Mr. Wilder dated March 25, 1991, contained a Form 870-L(AD) and corresponding schedule of adjustments for Valley Cable's taxable year 1984.  RDB also received a copy of the Palka letter along

with a copy of the Form 870-L(AD).  The relevant portion of the

Palka letter states:

Dear Mr. Wilder:

The Appeals Office has completed settlement negotiations on the * * * [Valley Cable partnership] and the results of those negotiations are shown on the enclosed Form 870-L(AD) and attached schedule of adjustments.  We believe this settlement is a fair and equitable resolution of the adjustments.

As a partner in the partnership, you have the right to participate in the settlement.  You may either agree to the settlement of both the penalties and the partnership items or agree to the settlement of only the partnership items. (Penalties include interest under section 6621(c) of the Internal Revenue Code.) The following instructions explain how you should sign the settlement agreement (Form 870-L(AD) to show the extent of your agreement:

If you agree to both the partnership adjustments and penalties, please sign Parts I and II of Form 870-L(AD).  This will allow us to close your case with finality on both the penalty and partnership items.

If you agree only to the settlement of the partnership items, please sign Part I of Form 870-L(AD).  This will allow us to close your case with finality for the partnership items only and will leave open any penalty issues.  A separate report on the penalties will be mailed to you later which will allow you to either file a petition to the United States Tax Court or to file a protest requesting further Appeals consideration. However, it is unlikely that the offer shown in the agreement will be changed unless you are able to submit facts not previously considered by the Appeals office.

If you do not agree to the settlement of the partnership items, a notice of Final Partnership Administrative Adjustment will be mailed to you on these items.  This notice will allow you to file a petition with the United States Tax Court, the Claims

Court or a Federal district court where the partnership's principal place of business is located. This notice will be mailed to you if we have not heard from you within 30 days as we will assume you do not agree with the settlement. If penalties have been asserted, they will not be included in the notice but will be included in a separate report which will be mailed to you after the partnership proceedings are concluded.

If you wish to accept this settlement as explained above, the signed agreement form with the attached schedule of adjustments must be returned within 30 days from the date of this letter. If a joint return was filed, both spouses must sign the form (see instructions on the form). The adjustments shown on the enclosed agreement form are partnership adjustments; you may determine your share of these adjustments by multiplying your percentage of partnership profit of [sic] loss times the total adjustments.

Once this settlement is accepted for the Commissioner, the service center will compute your tax liability and send you a bill for any additional amounts.

Please contact the person whose name and number are shown above if you have any questions regarding this settlement offer.

A copy of the Form 870-L(AD), parts I and II, is attached to this opinion as an Appendix.

Breese reviewed the Palka letter, but it did not make sense to him at the time, so Breese contacted Redding and asked "what was going on." In a letter dated April 1, 1991, from Redding to Balboni, Redding highlighted what he perceived to be inaccuracies in the Palka letter, including the statement that, if the partners do not agree to the settlement of the partnership items within 30 days, an FPAA will be issued. When the Palka letter

was mailed, respondent had already issued an FPAA, and the TMP for Valley Cable had already filed a petition in this Court. In a letter to Redding dated April 4, 1991, Balboni stated that the Palka letter was computer generated, that it was incorrect, and it should not have been sent in that form. In that same letter Balboni stated:

> In order to clear up any potential misunderstanding caused by the [Palka] letter in these cases, I am willing to write and send a letter to each of the partners of Valley Cable, Ltd., or their known representative, which clarifies the settlement offer and the deadline for its acceptance.

In an attempt to clarify the Palka letter, Balboni sent a letter dated April 4, 1991 (Balboni letter), to the partners of Valley Cable. That letter also was sent to Redding as counsel for Wilder. The Balboni letter stated:

> Dear Sir/Madam:
>
> I am the attorney representing the government in the above-referenced cases. Our records indicate that you are a partner in Valley Cable, Ltd. It has just been brought to my attention that you have received a letter from the Austin Compliance Center which communicates an offer by the government to settle the above-referenced cases. Because that "form" letter is not entirely correct, I am taking the unusual step of writing to you in an attempt to clarify the terms of the settlement and also to set the final deadline for accepting the offer. If you are represented in this matter, please forward this letter to your representative at once.
>
> The "form" letter states that if you do not agree to the settlement offer within 30 days, a Notice of Final Partnership Administrative Adjustments will be issued. This statement is incorrect because such a notice has already been issued for both the 1983 and 1984 taxable years. Both years are presently docketed

before the United States Tax Court as referenced above. Although the balance of the Compliance Center letter is correct, I want to clarify the terms of the settlement, as well as the manner and time-frame for accepting the settlement.

First, the settlement offer that you received may appear confusing at first glance because it is embodied in a schedule of partnership adjustments. The bottom line of the settlement offer, however, is that all of the items reflected on your income tax returns for the taxable years 1983 and 1984 which flow from your interest in Valley Cable, Ltd. will be removed from those returns. You will be allowed an ordinary deduction in 1983 equal to your partnership percentage of 1/2 of the total cash invested in the partnership as determined at the partnership level.

Second, the settlement offer also contains certain concessions by the government with respect to the penalties which have been recommended by the Examination Division in connection with your participation in Valley Cable, Ltd. The penalties are not at issue in the partnership proceeding but be advised that the offer to settle them will expire at the same time as the offer for the partnership items. In due course, a statutory notice of deficiency will be issued to you for the full amount of the recommended penalties if you choose not to accept the government's offer while it is available.

Third, the settlement offer can only be accepted by you if you (and your spouse, if a joint return was filed) execute the Form 870-L(AD), previously sent to you by the Compliance Center, and forward it to Mr. Peter Palka in an envelope <u>postmarked</u> no later than May 6, 1991, which date is the <u>Final</u> deadline for accepting the offer. If the Form 870-L(AD) is altered in any way, or if it is accompanied by a cover letter containing any conditions to the settlement, it will be considered a counter-offer and therefore a rejection of the government's offer. Mr. Palka's address is Appeals Division – I.R.S., 10850 Richmond Avenue, Suite 300, Houston Texas 77042. <u>The settlement agreement between you and the government will be consummated only upon the execution of the Form 870-L(AD) by an authorized representative of the government</u>.

As stated above, the government's offer to settle the above-referenced cases, including the penalty portion, will expire on <u>May 6, 1991</u>. This deadline will not be extended. However, if a partner of Valley Cable, Ltd. properly accepts the offer, by law you will be entitled to what is known as consistent settlement for a period of 60 days after the government executes that partner's Form 870-L(AD).

I sincerely hope that this letter eliminates any confusion which may have been caused by the "form" letter. As I am the attorney for the government, I expect that you will consult someone before accepting my word for all of the above. If you have any questions, however, please contact the undersigned * * *.

When Breese received the Balboni letter, he still was overseeing RDB's investment activities.

The partners of RDB met with William Podsednik, Jr. (Podsednik), a certified public accountant who had advised them on various matters since 1988, to discuss what options were available and whether to accept respondent's proposal. RDB, through its partners, decided to "accept" respondent's proposal. Mrs. Ray, acting on behalf of RDB, executed the Form 870-L(AD) on May 2, 1991. Mrs. Ray executed the Form 870-L(AD) because she held a majority interest in RDB. RDB forwarded the executed Form 870-L(AD), which applied to the 1983 and 1984 taxable years, to Redding, who forwarded the document to respondent.

On May 6, 1991, Redding delivered to Palka a letter dated May 6, 1991. The relevant portion of the letter states:

Dear Mr. Palka:

Attached are separate envelopes containing settlement acceptances for:

1. [material redacted]
2. [material redacted]
3. R.D.B. Investments II

*       *       *       *       *       *       *

Send copies of each 870-L(AD) to me on behalf of Victor M. Wilder as the Tax Matters Partner so we can determine when each settlement is accepted and who remain partners for notice purposes, etc.

On behalf of the Tax Matters Partner, send me a copy of the first settlement accepted by the I.R.S. and your computation of the time period for tendering requests for consistent settlement offers * * *.  I know several other of my clients do intend to accept but were not yet ready, or able, to submit an 870-L(AD) for various reasons.

Redding also delivered to Palka a cover letter dated May 6, 1991, and the Form 870-L(AD) executed by Mrs. Ray as RDB's authorized representative.  The relevant portion of the cover letter states:

DELIVERED BY MESSENGER

Mr. Peter Palka, Appeals Officer
Internal Revenue Service
10850 Richmond Avenue, Suite 300
Houston, Texas  77042

> Re:  Valley Cable, Ltd.: 1983-84 Settlement Acceptance;
>      R.D.B. Investments II, Inc.
>      TIN: 75-1866473

Dear Mr. Palka:

Pursuant to Mr. Balboni's letter of April 4, 1991, enclosed is an executed Form 870-L(AD) on behalf of the above-referenced taxpayers, accepting the Government's settlement offer.

Please send me a copy of the fully executed 870-L(AD) as soon as it is signed on behalf of the Internal Revenue Service.

Enclosed is my Power of Attorney. Please see that all further communication with the taxpayer regarding this matter is made through me.

Respondent's authorized representative executed the Form 870-L(AD) on December 6, 1991. Respondent assessed deficiencies in income taxes attributable to the settlement of the Valley Cable partnership items on December 3, 1992, as to the Rays' taxable years 1983 and 1984. Respondent assessed a deficiency in income tax attributable to the settlement of the Valley Cable partnership items on December 4, 1992, as to the Dominguezes' taxable year 1983. Respondent issued notices of deficiency dated December 4, 1992, determining additions to tax attributable to the Rays for the taxable years 1983 and 1984. Respondent issued a notice of deficiency dated December 4, 1992, determining additions to tax attributable to the Dominguezes for the taxable year 1983.

On January 10, 1994, the Rays and Dominguezes each made a payment in the amount of $5,000 to respondent, which was designated as a payment of income tax for the taxable year 1983.

OPINION

Under the TEFRA provisions, the tax treatment of partnership items is decided at the partnership level in a unified partnership proceeding rather than separate proceedings for each partner, Boyd v. Commissioner, 101 T.C. 365, 369 (1993), and "affected items", items affected by the treatment of partnership items (e.g., certain additions to tax), can only be assessed

following the conclusion of the partnership proceeding.  See sec. 6225(a); Maxwell v. Commissioner, 87 T.C. 783, 791 n.6 (1986). The assessment of tax attributable to partnership items of a partnership subject to the TEFRA provisions shall be made with respect to any partner during the period provided by sections 6229(a) through (f).  A settlement agreement converts partnership items to nonpartnership items, and the partner that enters into the settlement agreement is no longer treated as a party in the partnership proceeding.  Secs. 6226(d)(1)(A), 6231(b)(1)(C).  The period for assessment shall not expire before 1 year after the date on which the parties enter into a settlement agreement. Sec. 6229(f).  RDB, as a pass-thru partner, entered into a settlement agreement with respondent with respect to the partnership items of Valley Cable for the taxable years 1983 and 1984.  The settlement agreement entered into by RDB binds indirect partners, such as the Rays and Dominguezes, with respect to the partnership items of Valley Cable.  Sec. 6224(c)(1).  The dispute in these cases centers on when the parties entered into the settlement agreement.

Petitioners argue that respondent made a settlement offer which they accepted when they delivered the executed Form 870-L(AD) to respondent on May 6, 1991.  Respondent argues that the Form 870-L(AD) embodies the settlement agreement, and that the agreement became binding when executed by respondent's authorized representative on December 6, 1991.  Respondent contends that the

notices of deficiency dated December 4, 1992, were issued prior to the expiration of the period of limitations.  We agree with respondent.

General contract law principles govern tax case settlements. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436, supplemented by 53 T.C. 275 (1969); Smith v. Commissioner, T.C. Memo. 1991-412.  Where the intent of the parties to settle is evident and the terms of the settlement are otherwise ascertainable, then a tax settlement agreement may be binding even if it consists only of letters of offer and acceptance. Treaty Pines Invs. Partnership v. Commissioner, 967 F.2d 206, 211 (5th Cir. 1992); Haiduk v. Commissioner, T.C. Memo. 1990-506.

Petitioners argue that the Form 870-L(AD) is ambiguous as to which party is making an offer and which party is accepting the offer.  Respondent argues that the Form 870-L(AD) is not ambiguous and that it constitutes the settlement agreement between the parties.  Contract law principles generally direct that we look within the "four corners" of the agreement, unless it is ambiguous as to essential terms.  Rink v. Commissioner, 100 T.C. 319, 325 (1993), affd. 47 F.3d 168 (6th Cir. 1995).

Petitioners contend that the Form 870-L(AD) is ambiguous in that it sets forth two offers:  (1) An offer to enter into a settlement agreement, and (2) an offer to waive the restrictions on the assessment and collection of any deficiency.  Petitioners

conclude that only the second offer is subject to acceptance for the Commissioner.  Specifically, petitioners argue:

> The word "offer" in the second * * * paragraph [of the Form 870-L(AD)] refers to the last use of the word "offer" in the first * * * paragraph, which is the offer to waive the restrictions on assessment and collection.  Simply stated, this language meant that the assessment and collection of the agreed to liability could not take place until after the waiver of those restrictions was accepted on behalf of the Commissioner. * * * [Fn. ref. omitted.]

We find petitioners' interpretation unconvincing.

Petitioners argue that the term "undersigned", as used in the Form 870-L(AD), is ambiguous because the Form 870-L(AD) contained a signature line for both the taxpayer and respondent's representative.  On May 2, 1991, when Mrs. Ray executed the Form 870-L(AD) on behalf of RDB, her signature was the only signature on the Form 870-L(AD), and she became the "undersigned".  We conclude that petitioners' arguments that the Form 870-L(AD) is ambiguous are without merit.

Petitioners argue that the Palka and Balboni letters constitute an offer, and signing the Form 870-L(AD) was the specified method for accepting that offer.  Respondent argues that, by signing the Form 870-L(AD), petitioners extended an offer of settlement, and respondent accepted petitioners' offer on December 6, 1991.  Respondent contends that the Balboni and Palka letters solicited an offer from petitioners and set a deadline for petitioners to submit the settlement agreement to the appeals office.  The parties do not dispute that an agreement

was reached, but they interpret differently the Palka letter, the Form 870-L(AD), and the Balboni letter to parallel their respective arguments as to when the agreement was reached.

The parties argue at length how we should interpret the Balboni letter, and specifically the sentence that reads: "The settlement agreement between you and the government will be consummated only upon the execution of the Form 870-L(AD) by an authorized representative of the government."

The Balboni letter must be read in light of the Form 870-L(AD), which contains the following:  "the undersigned offers to enter into a settlement agreement"; "This offer is subject to acceptance for the Commissioner"; "Unless and until it is accepted, it will have no force or effect"; "If this offer is accepted for the Commissioner"; and "Date accepted for Commissioner".  After considering the Balboni letter and the language in the Form 870-L(AD), we agree with respondent's interpretation.  The Form 870-L(AD) provided that petitioners submit an offer to respondent.  See Gillilan v. Commissioner, T.C. Memo. 1993-366; H Graphics/Access, Ltd. v. Commissioner, T.C. Memo. 1992-345; Brookstone Corp. v. United States, 74 AFTR 2d 6025, 94-2 USTC par. 50,474 (S.D. Tex. 1994), affd. without published opinion 58 F.3d 637 (5th Cir. 1995).

Petitioners' reliance on Treaty Pines Invs. Partnership v. Commissioner, 967 F.2d 206 (5th Cir. 1992), is misplaced.  The court in Treaty Pines described the record as "sparse" but had

before it the taxpayer's letter purporting to accept the Commissioner's settlement offer and the Internal Revenue Service's letter purporting to confirm that the taxpayer had "accepted the original settlement offer".  Id. at 209, 211. Nothing reveals that the taxpayers in Treaty Pines had before them a document such as the Form 870-L(AD) that indicated no settlement would be reached until the 870-L(AD) was accepted by the Commissioner.  The court held that the exchange of letters was sufficient to constitute a settlement agreement.  Id. at 211.

Petitioners, on the other hand, were required to return the executed Form 870-L(AD) to respondent.  Petitioners complied with this requirement.  The language set forth in the Form 870-L(AD) did not coincide with petitioners' interpretation of the Balboni letter.  The document that petitioners argue constitutes an acceptance, the Form 870-L(AD), is replete with statements that RDB was submitting an offer to respondent that did not become binding until accepted by respondent.  After petitioners returned the executed Form 870-L(AD) to respondent, petitioners never received any confirmation analogous to the confirmation received by the taxpayers in Treaty Pines.

The terms of the Form 870-L(AD) and the circumstances under which the Palka and Balboni letters were created and exchanged belie petitioners' interpretation of those documents.  There is no doubt that Balboni was not precise in his use of the terms "offer" and "acceptance".  However, after reviewing the entire

record, we find that the parties entered into the settlement agreement on December 6, 1991, when respondent's authorized representative executed the Form 870-L(AD).  As such, we conclude that the notices of deficiency issued on December 4, 1992, were issued prior to the expiration of the applicable period of limitations.

To reflect the foregoing and the concessions by the parties,

<u>Decisions will be entered under Rule 155</u>.