T.C. Memo. 1996-208


UNITED STATES TAX COURT


TRANSPAC DRILLING VENTURE 1982-21, ASHER FENSTERHEIM, CHARLES L.
PINCUS, THOMAS D. CALLAHAN, DONALD W. DVORAK, AND THOMAS J.
WILLIAMS, PARTNERS OTHER THAN THE TAX MATTERS PARTNER,
ET AL.,[1] Petitioners v.COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos. 29181-86, 22689-87,        Filed April 30, 1996.
             19104-88,  5791-90.


Stafford Smiley and Graeme W. Bush, for Asher Fensterheim.

Victoria J. Kanrek, Mary Ann Amodeo, and Anthony H. Jones,

for respondent.

---

[1]    Cases of the following petitioners are consolidated
herewith:  Transpac Drilling Venture 1982-21, Asher Fensterheim
and Charles L. Pincus, Partners Other Than the Tax Matters
Partner, docket No. 22689-87; Transpac Drilling Venture 1982-21,
Asher Fensterheim, A Partner Other Than the Tax Matters Partner,
docket No. 19104-88; and Transpac Drilling Venture 1982-15,
Thaddeus A. and Stella M. Dukes, Partners Other Than the Tax
Matters Partner, docket No. 5791-90.

MEMORANDUM FINDINGS OF FACT AND OPINION

CLAPP, <u>Judge</u>:  These cases are before us on Asher Fensterheim's Motion to Dismiss for Lack of Jurisdiction as to Asher Fensterheim and to Strike (Fensterheim's Motion to Dismiss) on the ground that he has entered into settlement agreements with respondent pursuant to section 6224(c)(1) and, as a result, is no longer a party to these proceedings pursuant to section 6226(d)(1)(A).  The issue for decision is whether Asher Fensterheim (Fensterheim) entered into settlement agreements with respondent in Transpac Drilling Ventures 1982-15 and 1982-21 for the taxable years 1982, 1983, and 1984.  We hold that he did not.

All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

These cases are consolidated for trial, briefing, and opinion for the limited purpose of disposing of Fensterheim's Motion to Dismiss.  Some of the facts have been stipulated and are found accordingly.  We incorporate by reference the stipulations of facts and attached exhibits.

Asher Fensterheim, resided in White Plains, New York, when the petitions for readjustment of partnership items in these cases were filed.  Fensterheim is an attorney who specializes in commercial law and insolvency.

During the taxable year 1981, Fensterheim was a partner in Transpac Drilling Venture 1981-10 (Transpac partnership 1981-10), docket No. 9906-90. Fensterheim's interest in Transpac partnership 1981-10 resulted in a separate Tax Court case in which a decision has been entered. Fensterheim's Motion to Dismiss now before the Court does not involve Transpac partnership 1981-10. Transpac partnership 1981-10 was not subject to the unified audit and litigation procedures set forth in sections 6221 through 6233 (the TEFRA provisions) enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648, and amended retroactively by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 714(p)(1), 98 Stat. 494, 964.

During the taxable years 1982, 1983, and 1984, Fensterheim was a partner in Transpac Drilling Ventures 1982-1, 1982-15, and 1982-21 (Transpac partnerships), and these Transpac partnerships were subject to the TEFRA provisions. The principal place of business of the Transpac partnerships was 230 Park Avenue, New York, New York. Fensterheim and respondent agree that they have settled Fensterheim's interests in the items related to Transpac partnership 1982-1 for each of the years in issue. Items relating to Transpac partnerships 1982-15 and 1982-21 remain at issue for purposes of Fensterheim's Motion to Dismiss.

Transpac partnerships 1982-1, 1982-15, and 1982-21 were part of respondent's Transpac national litigation project. Respondent

had assigned Michael Goldbas (Goldbas) as the lead attorney on that project. The project encompassed over 2,000 partners, and Goldbas was responsible for the administration and litigation of the Transpac project.

Respondent mailed the tax matters partners of Transpac partnerships 1982-15 and 1982-21 Notices of Final Partnership Administrative Adjustments that set forth adjustments determined by respondent for the taxable years 1982, 1983, and 1984.

In a letter dated September 25, 1990 (September 25th letter), respondent mailed Fensterheim a separate Settlement Agreement for Partnership Adjustments and Affected Items (Form 870-L(AD)) for each Transpac partnership, 1982-1, 1982-15 and 1982-21. Relevant portions of the September 25th letter state:

> In re:    Settlement of Tax Matters
>           Relating to Transpac
>           Drilling Venture
>
> Dear Transpac Investor:
>
> You are probably aware that the Service has developed a settlement proposal with respect to matters relating to the disallowance of the losses (and credits) you reported from your Transpac Drilling Venture. The pending settlement offer is that you concede the full disallowance of all reported partnership losses (and credits) and the Government will concede all penalty issues. The interest on the tax deficiencies resulting from this settlement will run at 120% of the prevailing rate pursuant to I.R.C. § 6621(c).
>
> *       *       *       *       *       *       *
>
> In order to process the above described settlement you must complete the enclosed form 870-L(AD) * * * in the following manner:  First, complete the section * *

* of the form entitled "Taxpayer(s) name(s), address and zip code." * * *

*         *         *         *         *         *         *

Second, sign the form <u>twice</u> in the <u>spaces</u> entitled "Signature of Taxpayer" and set forth the date you signed the agreement. * * *

*         *         *         *         *         *         *

Please note that you are not obligated to accept the above described settlement.  After you have signed and transmitted the enclosed forms, however, you will not be able to retract your acceptance of the settlement offer. * * *

*         *         *         *         *         *         *

After we receive the executed Form 870-L(AD) * * * the form will be reviewed and executed by the Internal Revenue Service.  The settlement is not final until the enclosed forms are signed by a representative of the Internal Revenue Service.

The September 25th letter also set forth the address to which the completed forms should be mailed.

The Form 870-L(AD) contains the following language:  "the undersigned offers to enter into a settlement agreement"; "This offer is subject to acceptance for the Commissioner"; "Unless and until it is accepted, it will have no force or effect"; "If this offer is accepted for the Commissioner"; and "Date accepted for Commissioner".

In November 1990 at Fensterheim's law offices, Fensterheim met with Goldbas on a matter unrelated to these cases.  When the meeting ended, Fensterheim and Goldbas met privately to discuss Fensterheim's Transpac partnerships.  The two met for about 30

minutes and discussed the September 25th letter, the forms that Fensterheim received from respondent, and the procedure for settling Fensterheim's interests in the Transpac partnerships.

Sometime after the November 1990 meeting, Fensterheim asked Goldbas what the deficiencies would be if Fensterheim agreed to settle in each of the Transpac partnerships. In a letter to Fensterheim dated February 13, 1991, Goldbas sent computations of Fensterheim's tax deficiencies for the taxable years 1982 through 1985 based on the disallowance of losses and deductions from the Transpac partnerships, 1982-1, 1982-15, and 1982-21. Fensterheim asked his accountant, John Milo (Milo), to review the computations.

Milo recalculated the tax deficiencies shown in Goldbas' letter of February 13, 1991, and mailed the recalculated figures to Goldbas in a letter dated March 14, 1991.

On May 10, 1991, Goldbas mailed Fensterheim a stipulated decision for Transpac partnership 1981-10 and a revised computation of the tax deficiencies for the years 1982 through 1985 based on the disallowance of losses and deductions from Transpac partnerships 1982-1, 1982-15, and 1982-21. The relevant portion of Goldbas' May 10, 1991, letter states:

> Pursuant to your request we have computed the deficiencies for the 1982, 1983, and 1984 years resulting from the disallowance of Transpac Drilling Venture losses. As you are aware, you are a petitioner in the partnership actions that control the 1982, 1983, and 1984 tax years relating to the Transpac Drilling Ventures in which you are a partner. You wanted a

computation before you executed the consent form which will result in the settlement of your Transpac Drilling Venture losses. These computations account for the matters raised in your accountant's letter of March 14, 1991. Your accountant agreed with our computation of the tax deficiencies for the 1983 and 1984 years and requested that we consider certain items that related to the 1982 year that were allegedly not considered in the original computations that we submitted to you on February 13, 1991. Accordingly, as agreed, you will execute the agreements relating to the assessment for the 1982 through 1985 tax years as soon as possible.

In light of the status of the current partnership actions, we will provide 30 additional days for the execution of the Form 870-L agreements that we have provided in order to resolve the tax deficiencies relating to Transpac partnership items for the 1982 through 1985 years.

Milo reviewed the computations, revised them, and mailed the revised computations to Goldbas in a letter dated June 3, 1991.

After unsuccessful attempts to reach Goldbas by phone, Fensterheim sent a letter to Goldbas via Federal Express dated June 7, 1991, stating that he wanted to discuss the various settlement documents. After receiving Fensterheim's letter, Goldbas called Fensterheim, and they discussed the various documents.

On June 10, 1991, Fensterheim and his wife executed the Form 870-L(AD) for Transpac partnership 1982-1. They also executed the stipulated decision for Transpac partnership 1981-10. Fensterheim gave the executed documents to his secretary, Apryl Deshler (Deshler).

On June 14, 1991, Fensterheim was in Boston, and he called Deshler and instructed her to send the Form 870-L(AD) for

Transpac partnership 1982-1 and the stipulated decision document relating to Transpac partnership 1981-10 to Goldbas. Deshler prepared a cover letter dated June 14, 1991, and she signed Fensterheim's name on his behalf. The relevant portion of the letter states:

> Re: Asher and Deborah Fensterheim
> Transpac Drilling Venture
> 1982-1
> <u>Tax Years 1982, 1983, and 1984</u>
>
> Dear Mr. Goldbas:
>
> In accordance with our telephone conversation, I am forwarding to you form 870-L(AD) Settlement Agreement for Partnership Adjustments and Affected Items, which has been signed by both Asher Fensterheim and Deborah Fensterheim.
>
> I also enclose four copis [sic] of the Stipulation and Decision in the Tax Court case, Docket No. 9906-90, which has likewise been signed by both Asher Fensterheim and Deborah Fensterheim.
>
> I would appreciate your calling me upon receipt of the enclosed as I would like to discuss with you what the next steps will be.

On June 14, 1991, Deshler mailed a package to Goldbas that contained the following: (1) The cover letter dated June 14, 1991, signed on behalf of Fensterheim by Deshler; (2) an executed Form 870-L(AD) related to Transpac partnership 1982-1 for the taxable years 1982, 1983, and 1984, bearing Fensterheim's and his wife's original signatures, together with the accompanying Schedule of Adjustments; and (3) the stipulated decision for Transpac partnership 1981-10 bearing Fensterheim's and his wife's

original signatures.  Fensterheim did not examine the contents of this package.

Deshler did not testify at trial, and Fensterheim made no attempt to contact Deshler to ascertain whether she had any recollection of the events that transpired on June 14, 1991.

Respondent received the package mailed by Deshler and processed the executed Form 870-L(AD) for Transpac partnership 1982-1 and the stipulated decision for Transpac partnership 1981-10.  Respondent's personnel had no personal knowledge and no recollection of the package's being received or of the contents of the package.

On July 22, 1991, respondent's authorized representative countersigned the Form 870-L(AD) for Transpac partnership 1982-1, and a copy of the countersigned Form 870-L(AD) was sent to and received by Fensterheim.  Fensterheim was aware that respondent had 1 year from the date of settlement to assess his partnership liabilities.

In October 1991, respondent filed two Notices of Settlement with the Court.  Each Notice of Settlement related to Transpac partnership 1982-1.  The Notices of Settlement indicated that Fensterheim and respondent had entered into a binding settlement on July 22, 1991, as to all partnership items related to Transpac partnership 1982-1.  Respondent served the Notices of Settlement on Fensterheim.  At no time did respondent file with this Court, or serve on Fensterheim, any Notice of Settlement for

Fensterheim's partnership items in Transpac partnership 1982-15 or Transpac partnership 1982-21.

Respondent has no record of having received from Fensterheim in 1991 an executed Form 870-L(AD) for either Transpac partnership 1982-15 or Transpac partnership 1982-21.

In 1991 and 1992, respondent's Albany District Counsel maintained settlement logs that constituted a record of documents pursuant to Rule 248(c) received from Internal Revenue service centers. During those years, respondent's Albany District Counsel did not maintain a log reflecting: (1) Communications from taxpayers about possible settlements; (2) receipt of Forms 870-L(AD) submitted by taxpayers; or (3) Forms 870-L(AD) received from taxpayers by respondent's service centers.

On March 11, 1992, respondent attempted without success to deliver to Fensterheim informal discovery requests for Transpac partnership 1982-21. Respondent delivered these documents to Fensterheim on June 23, 1992.

In a letter to Goldbas dated July 30, 1992, Fensterheim stated that he had settled the various Transpac partnerships and had paid the deficiencies.

In a letter to Fensterheim dated August 28, 1992, Rosalyn C. Shaughnessy (Shaughnessy), a paralegal in respondent's Albany District Counsel office, advised Fensterheim that respondent's records indicated that Fensterheim and respondent had settled

Transpac partnership 1982-1 but not Transpac partnerships 1982-15 and 1982-21.

In a letter to Shaughnessy dated September 9, 1992, Fensterheim stated that he had settled his interests in each Transpac partnership, 1982-1, 1982-15, and 1982-21. Fensterheim enclosed with his letter copies of three Forms 870-L(AD), one for each Transpac partnership, 1982-1, 1982-15, and 1982-21. Fensterheim's and his wife's signatures appeared on each of the Forms 870-L(AD), but there were no signatures by respondent's authorized representative.

In a letter to Fensterheim dated October 13, 1992, Goldbas informed Fensterheim that duplicate settlement packages for the Transpac partnerships 1982-15 and 1982-21 would be sent to him and that he should execute and return them to the Andover Service Center. Fensterheim did not execute these duplicate settlement documents.

## OPINION

Under the TEFRA provisions, the tax treatment of partnership items is decided at the partnership level in a unified partnership proceeding rather than separate proceedings for each partner, Boyd v. Commissioner, 101 T.C. 365, 369 (1993), and "affected items", items affected by the treatment of partnership items (e.g. certain additions to tax), only can be assessed following the conclusion of the partnership proceeding. See sec. 6225(a); Maxwell v. Commissioner, 87 T.C. 783, 791 n.6 (1986).

The assessment of tax attributable to partnership items of a partnership subject to the TEFRA provisions shall be made with respect to any partner during the period provided by section 6229(a) through (f). A settlement agreement converts partnership items to nonpartnership items, and the partner that enters into the settlement agreement is no longer treated as a party in the partnership proceeding. Secs. 6226(d)(1)(A), 6231(b)(1)(C). The period for assessment shall not expire before 1 year after the settlement agreement is entered into. Sec. 6229(f).

Fensterheim argues that by virtue of settlement agreements entered into with respondent for Transpac partnerships 1982-15 and 1982-21, he is no longer a party to these partnership proceedings. Respondent argues that Fensterheim and respondent have not entered into settlement agreements in Transpac partnerships 1982-15 and 1982-21, and, therefore, Fensterheim remains a party to these partnership proceedings.

General contract law principles govern tax case settlements. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436, supplemented by 53 T.C. 275 (1969); Smith v. Commissioner, T.C. Memo. 1991-412. Where the intent of the parties to settle is evident and the terms of the settlement are otherwise ascertainable, then a tax settlement agreement may be binding even if it consists only of letters of offer and acceptance. Treaty Pines Invs. Partnership v. Commissioner, 967 F.2d 206, 211 (5th Cir. 1992); Haiduk v. Commissioner, T.C. Memo 1990-506.

Fensterheim argues that respondent's September 25th letter constitutes an offer and that sometime prior to May 10, 1991, he orally accepted respondent's offer. Respondent argues that the September 25th letter does not constitute an offer. We agree with respondent.

The September 25th letter explains that, in order to process the settlement, the taxpayer must complete the Form 870-L(AD), sign the Form 870-L(AD), and mail the completed Form 870-L(AD) to respondent at a specified address. We conclude that the September 25th letter did not constitute an offer to Fensterheim from respondent. The September 25th letter outlines the settlement proposal and the steps necessary to complete the settlement. In addition, the September 25th letter must be read in light of the Form 870-L(AD). The language set forth in the Form 870-L(AD) reinforces the conclusion that the September 25th letter does not constitute an offer from respondent. See Estate of Ray v. Commissioner, T.C. Memo. 1995-561; Gillilan v. Commissioner, T.C. Memo. 1993-366; H Graphics/Access, Ltd. v. Commissioner, T.C. Memo. 1992-345; Brookstone Corp. v. United States, 74 AFTR 2d 6025, 94-2 USTC par. 50,474 (S.D. Tex. 1994), affd. without published opinion 58 F.3d 637 (5th Cir. 1995).

Assuming, arguendo, that Fensterheim received an offer from respondent, Fensterheim has failed to show that he accepted the alleged offer. Fensterheim asserts that he orally accepted respondent's offer, but he sets forth no facts to support this

conclusion. The communications that took place between September 25, 1990, and May 10, 1991, related to ascertaining final computations and making clear the steps necessary to achieve a settlement. The purpose was to satisfy Fensterheim and answer his questions preliminary to signing the Forms 870-L(AD). Nothing that transpired constituted a settlement agreement. Fensterheim relies entirely on the language in the May 10, 1991, letter from Goldbas stating: "Accordingly, as agreed, you will execute the agreements relating to the assessment for the 1982 through 1985 tax years as soon as possible." The quoted language does not indicate that a settlement had been reached.

In the letter of May 10, 1991, Goldbas stated "You wanted a computation before you executed the consent form which will result in the settlement of your Transpac Drilling Venture losses" and "we will provide 30 additional days for the execution of the Form 870-L agreements that we have provided in order to resolve the tax deficiencies relating to the Transpac partnership items for the 1982 through 1985 years." This language indicates that no settlement had been reached between Fensterheim and respondent as of that date. Nothing in Goldbas' letter indicates that a settlement had been reached or would be reached without the Forms 870-L(AD).

Fensterheim next argues that on June 14, 1991, Deshler mailed respondent three executed Forms 870-L(AD), one for each Transpac partnership, 1982-1, 1982-15, and 1982-21. Fensterheim

contends that respondent somehow lost the Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21.  Fensterheim concludes that respondent's failure to process the Forms 870-L(AD) for Transpac partnership 1982-15, and 1982-21 does not affect the validity of the settlements.  Respondent contends that the package mailed by Deshler did not contain executed Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21.

Fensterheim has not shown that the package mailed by Deshler contained executed Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21.  The cover letter dated June 14, 1991, signed by Deshler on behalf of Fensterheim contains the following caption:

> Re:  Asher and Deborah Fensterheim
> Transpac Drilling Venture
> 1982-1
> Tax Years 1982, 1983, and 1984

The body of that letter states "I am forwarding to you form 870-L(AD) Settlement Agreement for Partnership Adjustments and Affected Items, which has been signed by both Asher Fensterheim and Deborah Fensterheim."  The caption and the quoted sentence refer to a single Form 870-L(AD), which supports respondent's argument that the package mailed by Deshler did not contain Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21.  The signed stipulated decision for the already settled Transpac partnership 1981-10 was also forwarded with this letter.  The signed stipulated decision for Transpac partnership 1981-10 was

mentioned in the body of the letter but not in the caption.  It was processed in due course and is not in issue here.  We find it improbable that Deshler would include the Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21 without comment in the caption or the body of the letter, particularly where the Form 870-L(AD) for Transpac partnership 1982-1 and the stipulated decision for Transpac partnership 1981-10 were so clearly identified.

Fensterheim had no personal knowledge of what Deshler mailed to respondent on June 14, 1991.  He was out of town at the time. Fensterheim did not produce Deshler at trial, and Fensterheim has failed to show that he made a reasonable attempt to locate Deshler.  Fensterheim testified that his inquiry into Deshler's whereabouts consisted of checking his telephone index for her number.  Fensterheim testified that Deshler had moved "out West", but that he made no attempt to locate her through telephone listings or any other means.  Under these circumstances, we infer that, had Fensterheim produced Deshler to testify at trial, her testimony would have been unfavorable to him.  Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  We also note that Fensterheim's accountant, Milo, was not called to testify.  He might have been able to shed some light on the discussions, the extent and timing of Fensterheim's tax knowledge, and Fensterheim's intent.

Fensterheim should have been well aware that he had not settled Transpac partnerships 1982-15 and 1982-21. In October 1991, respondent served Notices of Settlement on Fensterheim that indicated a settlement of all partnership items related to Fensterheim's interests in Transpac partnership 1982-1. Fensterheim also received a copy of the Form 870-L(AD) related to Transpac partnership 1982-1 that had been countersigned by respondent's authorized representative. Fensterheim received no such Notices of Settlement or Forms 870-L(AD) related to Transpac partnerships 1982-15 and 1982-21, and Fensterheim never inquired as to whether these documents would be forthcoming.

Respondent's authorized representative countersigned the Form 870-L(AD) for Transpac partnership 1982-1 on July 22, 1991. Fensterheim was aware that respondent had 1 year from the date of settlement to assess his partnership liabilities. We do not consider it a coincidence that Fensterheim's letter of July 30, 1992, to Goldbas was the first indication that Fensterheim considered his interests in Transpac partnerships 1982-15 and 1982-21 settled.

We conclude that the package mailed by Deshler on June 14, 1991, did not contain executed Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21.

Fensterheim next argues that the copies of the Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21 that he mailed to respondent on September 9, 1992, served to "ratify and

reaffirm" the settlement he had reached with respondent. This argument is without merit.

Fensterheim's letter of September 9, 1992, did not purport to be a settlement. It was merely correspondence in which Fensterheim alleged that all of his interests in the Transpac partnerships had been settled in 1991.

Respondent's authorized representative did not execute the Forms 870-L(AD) for Transpac partnerships 1982-15 and 1982-21, and we have found that there were no settlement agreements for Transpac partnerships 1982-15 and 1982-21 for Fensterheim to "ratify and reaffirm".

Subsequent to Fensterheim's letter of September 9, 1992, Goldbas sent a duplicate set of settlement documents to Fensterheim covering Transpac partnerships 1982-15 and 1982-21, which Fensterheim ignored. If Fensterheim had intended finally to consummate the settlement in September 1992, as suggested in his alternative argument, he could easily have done so by signing the duplicate set of settlement documents.

Fensterheim was his own only witness. He was clear and positive regarding facts favorable to him, but vague and cavalier with respect to matters adverse to him. He seemed to know the difference. He was well prepared. After listening to Fensterheim's testimony and observing him on the stand, we do not find his version of the facts to be believable. We conclude that

Fensterheim developed a well thought-out scheme to slip one (or two) by respondent.  It did not work.

We hold that Fensterheim and respondent did not enter into settlement agreements for Transpac partnerships 1982-15 and 1982-21 for the taxable years 1982, 1983, and 1984, and Fensterheim remains a party to these partnership proceedings.

To reflect the foregoing,

<u>An Order will be issued denying</u>

<u>Fensterheim's Motion to Dismiss</u>.